OPINION *Page 2 
{¶ 1} Defendant-appellant Jonathan Clay appeals after being found guilty of aggravated murder with a firearm specification in the Mahoning County Common Pleas Court. He presents sixteen assignments of error on appeal dealing with speedy trial, impeachment, photographs, discovery, sufficiency, weight, exculpatory evidence, prosecutorial misconduct, ineffective assistance of counsel, jury instructions and sentencing. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On June 26, 2007, Terrence Brown was killed by a gunshot through the neck as he stood outside an apartment complex on Woodcrest Avenue in Youngstown, Ohio. Appellant was indicted for aggravated murder under R.C. 2903.01(A) for purposely causing Terrence Brown's death with prior calculation and design. Appellant was also charged with a specification concerning the discharge of a firearm from a motor vehicle under R.C. 2941.146(A). His cousin, Jason Clay, was indicted as a codefendant, but the cases were severed.
 {¶ 3} Appellant's jury trial began on December 5, 2007. Carmen Brown testified that she was sitting in front of the apartment complex when a nice, white sport utility vehicle (SUV) with "fancy" wheels drove up Woodcrest playing loud music with the windows down. The front seat passenger and the passenger behind the driver were sitting on the window ledges waving their hands to the music. (Tr. 338-339). Carmen Brown noticed the SUV bump into and then drive around a van that was idling in the street. (Tr. 341). A few minutes later, the SUV came back down the street, and gunfire erupted from the SUV, hitting Terrence Brown. (Tr. 342-344). A second set of shots was then fired from the SUV as it slowed at a walkway between the buildings. (Tr. 344).
 {¶ 4} Next, Antwon Lewis testified that on the day of the shooting, the Clays, whom he knew for two months, picked him up in a white SUV. (Tr. 386, 388). He identified pictures of a burned out SUV discovered three days after the incident as the SUV used by the Clays that day. (Tr. 389). He placed Jason Clay in the driver's seat, *Page 3 
appellant Jonathan Clay in the front passenger seat, himself in the back behind appellant and Darryl Armstrong in the back behind the driver. (Tr. 390-391).
 {¶ 5} Antwon said they smoked marijuana for approximately an hour. (Tr. 419-420). He confirmed that they drove past the apartment complex with the windows down, the music up and with Darryl Armstrong hanging out the window. (Tr. 394-395, 397). Antwon Lewis testified that as they drove up Woodcrest, he saw a person named Chuck raise a gun toward their vehicle, so he ducked and heard shooting. (Tr. 395, 397, 399).
 {¶ 6} Antwon related that they bumped a van in the street in order to escape the gunshots. (Tr. 399). He explained that they then parked at a turnaround on McBride where the girls from the van were pleading with them not to do anything crazy. (Tr. 401). The SUV then proceeded back down Woodcrest. Antwon noticed a man "stutter stepping" as if trying to decide which way to run, at which point appellant fired one or two shots at the man, while stating, "I got your ass now." (Tr. 408-409). Antwon disclosed that appellant said the man should have stayed in his house to avoid getting shot. (Tr. 410-412).
 {¶ 7} Darryl Armstrong then testified that he had known the Clays for years and was good friends with appellant, whom he referred to as his cousin. (Tr. 429, 443-444). He confirmed each person's placement within the vehicle. (Tr. 431). He also stated that a person named Chuck started firing at them in front of the apartment complex. (Tr. 432). He noted that they parked on McBride to check for bullet holes and that there were some girls there. (Tr. 433-434). Darryl further testified that when they drove back down Woodcrest, he ducked when he heard a shot. (Tr. 435). He admitted that he heard a shotgun blast from within the SUV. (Tr. 436). However, he stated that he did not recall a prior statement to police that Jason Clay had asked appellant if he was loaded up and that appellant had responded affirmatively. (Tr. 438). He also could not recall telling police that appellant had a shotgun in his lap and was the only one with a gun. (Tr. 439-440).
 {¶ 8} Next, Rakiesha Shelton, who knew the Clays, testified that she was in the van that was bumped by the SUV after shots were heard. (Tr. 494). She noted that both the van and the SUV stopped on McBride where Jason Clay was outraged *Page 4 
that someone shot at him. (Tr. 496-497, 506). She said that Jason was driving and that appellant was the front seat passenger. (Tr. 498). She also testified that Jason grabbed a big gun and drove off, at which point she heard shots. (Tr. 497). When she ran down to the apartments, she saw that the victim had been shot. (Tr. 500).
 {¶ 9} Ladonna Shinn, the driver of the van, testified that when she parked on McBride after being bumped by the white SUV, she saw a big gun protruding from the front passenger window of the SUV. (Tr. 511-512, 515). When she exited her van and ducked, she heard her friend asking the occupants of the SUV not to go back down the street shooting because her brother was down there. (Tr. 512-513). She also testified that she heard shooting after the SUV drove back down Woodcrest. (Tr. 518).
 {¶ 10} The victim's sister, Keasha Brown, was another occupant of the van. She testified that she too heard gunshots before they parked next to the white SUV on McBride. She disclosed that she saw two males exit the white SUV, one with a big gun and one with a small gun. (Tr. 524). After the SUV drove off, she heard multiple gunshots, and she then found her brother dead on her doorstep. (Tr. 527).
 {¶ 11} Danielle Catley, yet another occupant of the van, confirmed the original gunshots, the SUV bumping the van and the parking on McBride. She then identified appellant Jonathan Clay as having a big gun as he sat in the front passenger seat just prior to the shooting. (Tr. 543-544, 548).
 {¶ 12} A sergeant with the Youngstown Police Department testified that they found a live shell from a twelve gauge trap shot (pellet) shotgun in the street in front of the address where the victim was killed. (Tr. 459, 465). At that same location, they also found a spent shell from a twelve gauge shotgun that would have contained high shock ammunition in the form of a single lead slug. (Tr. 459, 468).
 {¶ 13} The coroner testified that the victim died from a single gunshot wound through the neck. (Tr. 616). He found the wound consistent with a single shotgun slug. (Tr. 621).
 {¶ 14} The jury found appellant guilty as charged (rather than opting for the complicity verdict which they were also offered). The court sentenced appellant in a December 20, 2007 entry to thirty years to life for aggravated murder and a *Page 5 
mandatory, consecutive sentence of five years for the firearm specification. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 15} Appellant's first assignment of error alleges:
 {¶ 16} "DEFENDANT/APPELLANT WAS DENIED HIS STATUTORY RIGHT TO A TRIAL WITHOUT INORDINATE DELAY."
 {¶ 17} Since he was charged with a felony, appellant was to be tried within two hundred seventy days after his arrest. See R.C. 2945.71(C)(2). He is entitled to triple time because he was held in jail in lieu of bail on the pending charge. See R.C. 2945.71(E). Thus, the state had ninety days within which to try appellant.
 {¶ 18} Appellant was arrested on July 23, 2007. As such, time began running on July 24, 2007, the day after his arrest. See State v.Turner, 7th Dist. No. 93CA91, 2004-Ohio-1545, ¶ 23; R.C. 1.14; Crim. R. 45(A). Twenty-three days passed. Then, on August 16, 2007, the defense filed a request for discovery. The state provided discovery to the defense on August 30, 2007.
 {¶ 19} Speedy trial time is tolled by any period of delay necessitated by a motion, proceeding or action made or instituted by the accused. R.C. 2945.72(E). This includes a discovery demand and the reasonable period of responding thereafter. State v. Brown, 98 Ohio St.3d 121,2002-Ohio-7040, ¶ 18, 23, 26 (discovery demand and motion for bill of particulars are tolling events). Accordingly, the speedy trial clock stopped during this time.
 {¶ 20} In the meantime, on August 28, 2007, appellant filed a pro se "motion to withdraw counsel" claiming a lack of communication and asking for new counsel to be appointed. A hearing was held on his motion on September 19, 2007. At this hearing, the defendant agreed to withdraw his motion. The court indicated as such in a September 21, 2007 judgment entry.
 {¶ 21} Appellant acknowledges that speedy trial time is tolled by any period of delay necessitated by the accused's lack of counsel. See R.C. 2945.72(C). He argues, however, that his filing of the motion alone did not deprive him of counsel and that he was still represented pending the hearing on the motion. However, this fails to acknowledge the aforementioned exception in division (E). That is, speedy trial time is *Page 6 
also tolled by any period of delay necessitated by a motion, proceeding or action made or instituted by the accused. R.C. 2945.72(E). (We note here that appellant does not argue that three weeks was unreasonable for hearing such a motion.) Consequently, less than two weeks were added to the clock when another tolling event occurred.
 {¶ 22} Specifically, at the October 3, 2007 pretrial, the parties agreed to a continuance of the October 10 trial date. The trial court memorialized the agreement in its October 4, 2007 judgment entry, which was signed by both attorneys. The entry also noted that discovery was ongoing and that the coroner was unavailable for at least two weeks. The trial was then reset for December 5, 2007.
 {¶ 23} A continuance sought by the defense or a reasonable continuance sought by the state is a tolling event. See R.C. 2945.71(H). Besides the fact that the defense agreed to the continuance, the state's continuance request can be considered reasonable. Notably, all reasons for the continuance on the state's motion need not be contained in the entry as is required for sua sponte continuances. Rather, the reasonableness of a state's request can be contained in the record of the hearing as well.State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 62, distinguishingState v. Mincy (1982), 2 Ohio St.3d 6. Here the state claimed at the speedy trial motion hearing that another reason for the continuance besides the coroner's unavailability was the conflict in schedules between defense counsel and the state. The defendant should have ordered the pretrial transcript on appeal if he disputed that this scheduling conflict was voiced as a reason for the continuance. See App. R. 9.
 {¶ 24} Regardless, we have a signed agreement to a continuance here. There was no complaint by the defense as to the reset trial date. (Tr. 13-15). In fact, it was the state who unsuccessfully sought to advance the trial date by a couple days. Consequently, time was tolled from the continuance until the reset trial date, which proceeded as scheduled on December 5, 2007.
 {¶ 25} We also note that appellant's pro se speedy trial dismissal motion filed on November 28, 2007 also stopped the running of the clock until that motion was heard on December 5, 2007, the morning of trial. See State v. Broughton (1991), 62 Ohio St.3d 253, 262 (speedy trial motion tolls time). See, also, R.C. 2945.71(E). *Page 7 
 {¶ 26} Due to the tolling events set forth above, not even half of the ninety day try-by time had passed. Notably, appellant's speedy trial rights would not have been violated even if the motion to withdraw should have been addressed earlier.
 {¶ 27} Finally, we point out that one of appellant's main arguments here was that time should not be tolled by the state's discovery additions provided after the state's initial response to his discovery request. However, we did not rely on any such additions as tolling events. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 28} Appellant's second assignment of error contends:
 {¶ 29} "THE TRIAL COURT ERRED WHEN IT LIMITED THE DEFENDANT/ APPELLANT'S ABILITY TO CROSS EXAMINE STATE'S WITNESS ANTWON LEWIS WITH REGARD TO HIS PRIOR FELONY CONVICTION."
 {¶ 30} The state's witness, Antwon Lewis, had been adjudicated a juvenile delinquent in 2005 due to a robbery. In 2007, he was convicted as an adult of having a weapon while under disability, which disability arose from the juvenile robbery adjudication. Before appellant's trial, the state filed a motion in limine to prohibit evidence on Antwon's delinquency adjudication. Defense counsel countered that since the adult weapons conviction was based upon the prior adjudication and since the adult indictment already disclosed the juvenile adjudication, he should be able to disclose the robbery adjudication to the jury. The court disagreed and granted the state's motion in limine. (Tr. 24). Appellant now argues that the court denied him a fair trial.
 {¶ 31} Pursuant to Evid. R. 609(D), evidence of a juvenile adjudication is not generally admissible for impeachment purposes unless a statute provides otherwise. See, also, R.C. 2151.357(H) (Evidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding). Thus, where the reference to the juvenile adjudication is made merely to disclose that the adjudication exists in order to denigrate the former offender's general credibility, the juvenile adjudication is inadmissible. State v. Goodwin (Sept. 24, 2001), 7th Dist. No. 99CA220 (distinguishing between general and *Page 8 
specific impeachment). See, also, Davis v. Alaska (1974), 415 U.S. 308,319 (use of adjudication for purpose of bias).
 {¶ 32} Appellant acknowledges that due to this rule, Antwon's delinquency adjudication would not normally be admissible to merely impeach his credibility. He concedes that his intended use was mere general impeachment. Nevertheless, he believes that since the fact of adjudication appears in the adult indictment, the confidentiality of the juvenile adjudication was already exposed thus negating the reason behind the rule. However, there is no such exception to the bar on general impeachment by way of a juvenile adjudication.
 {¶ 33} In conclusion, it is well established that the admission or exclusion of evidence rests within the sound discretion of the trial court and that absent an abuse of discretion, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Robb (2000), 88 Ohio St.3d 59, 68; State v.Martin (1985), 19 Ohio St.3d 122, 129. In reviewing for an abuse of discretion, we determine whether the court's attitude was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157. Considering the plain language of the rule, the court did not abuse its discretion.
 {¶ 34} Moreover, appellant's confrontation rights were not affected where the intended use of the juvenile adjudication was mere general impeachment. See State v. Cox (1975), 42 Ohio St.2d 200, 204. There is no reason why the existence of an adult indictment that mentions a prior juvenile adjudication of a witness would give appellant greater confrontation rights. As such, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 35} Appellant's third assignment of error provides:
 {¶ 36} "THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO TO IMPEACH THEIR OWN WITNESS, DARRYL ARMSTRONG, WITHOUT A SHOWING OF SURPRISE AND AFFIRMATIVE DAMAGE AS REQUIRED BY RULE 607(A) OF THE OHIO RULES OF EVIDENCE."
 {¶ 37} Appellant complains that the state improperly impeached its own witnesses, Darryl Armstrong and Rakiesha Shelton. As aforementioned, the state presented the testimony of Darryl Armstrong, who was appellant's good friend and *Page 9 
who was sitting behind the driver in the SUV. Darryl admitted that a shot came from within the SUV. However, he stated that since he was ducking, he did not see who fired the shot and that he did not see appellant with a gun. (Tr. 436, 439). The state asked if he remembered making certain additional statements to police. He testified that he did not remember telling police that appellant said that he was loaded up immediately before the shooting. (Tr. 438-439). He also did not recall telling police that appellant got the gun out, had it in his lap and was the only one with a gun. (Tr. 439-440). By way of explanation for his inability to recall his statement, he noted that he had been high. (Tr. 439).
 {¶ 38} During Friday's cross-examination, Darryl Armstrong testified that he met with the assistant prosecutor on Monday. Defense counsel asked him if he told the prosecutor everything he was telling the jury, and he responded that he did. (Tr. 448). Thereafter, the state called the detective who interviewed Darryl Armstrong. He identified an interview recorded on DVD, and it was played to the jury. (Tr. 453-454).
 {¶ 39} Thereafter, Rakiesha Shelton, whose cousin has a baby with appellant, testified that it was Jason Clay who retrieved the big gun from the back of the vehicle before driving away. (Tr. 497). The state asked her if she told police that it was appellant who retrieved the gun, and she responded negatively, stating that appellant did not exit the SUV. (Tr. 499). Later, the state called the detective who interviewed Rakiesha, and he disclosed that she had identified appellant as the one with the shotgun. (Tr. 592-593). Appellant complains that the questioning of the witnesses on their prior statements and the detective's testimony on this subject constituted improper impeachment.
 {¶ 40} Pursuant to Evid. R. 607:
 {¶ 41} "(A) The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801 (D)(1)(a), 801(D)(2), or 803.
 {¶ 42} "(B) A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." *Page 10 
 {¶ 43} There is no question that the state had a reasonable basis for asking the questions relating to impeachment. Thus, appellant raises only Evid. R. 607(A) and claims that plain error is established by the state's failure to show surprise and affirmative damage. In support of his lack of surprise argument, appellant points to Darryl Armstrong's statement on cross-examination that he told the state how he would testify a few days before trial.
 {¶ 44} As appellant concedes, we are reviewing for plain error as there was no relevant objection placed into the record regarding this impeachment. (Tr. 452, 499, 593). We note that there was one objection made during the state's questioning of Darryl; however, it came only after the second question regarding his lack of recall, and it did not disclose the basis for the objection, which in fact appeared to be based upon the "asked and answered" doctrine. (Tr. 438). Due to this fact and the fact that appellant admits that we are reviewing only for plain error, this is an insufficient objection to the impeachment. See Evid. R. 103(A)(1) (objection must state the specific ground of objection, if the specific ground was not apparent from the context).
 {¶ 45} Plain error that affects substantial rights can be recognized by the reviewing court even in the absence of objection. Evid. R. 103(D); Crim. R. 52(D). In order to reverse on an error alleged to be plain error, there must be a deviation from a legal rule, the error must represent an obvious defect in the proceedings, and the error must have affected the outcome of the trial. State v. Barnes (2002),94 Ohio St.3d 21, 27. Even so, this court is not absolutely obligated to correct such errors as the decision to correct plain error is discretionary. Id. Plain error is applied "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, 97.
 {¶ 46} Appellant claims that the error was plain because the court did not require the state to show surprise and affirmative damage. However, the state did call for a side bar after Darryl and Rakiesha answered some questions that were not in accordance with their prior statements and before resorting to any impeachment. (Tr. 435, 499). These side bars were not recorded. Thus, appellant's lack of objection is even more prohibitive to our review. That is, the state very well may have made a sufficient showing of surprise to the court at the side bars. *Page 11 
 {¶ 47} We also point out that Darryl's affirmative response to defense counsel's question (on whether he told the state a few days before trial everything that he was telling the court now) may not actually establish that he told the state that he was going to recant the parts of his statement to police that incriminated appellant. In any case, the court was not required to believe that he previously informed the prosecutor of his recantation.
 {¶ 48} As for affirmative damage, Darryl went from seeing appellant with the shotgun to not seeing appellant with the gun, and he went from stating that appellant was the only one in the car with a gun to stating that there were a couple of guns being fired from the car. See State v.Jordan, 167 Ohio App.3d 157, 2006-Ohio-2759, ¶ 42-43 (witness went from having seen the defendant shoot to claiming that he could not see the defendant that night). Similarly, Rakiesha went from seeing appellant retrieve the shotgun to seeing Jason Clay retrieve the shotgun. The court could have rationally found that this constituted affirmative damage.
 {¶ 49} We also note, regarding any leading questions, that when a party calls a hostile witness, an adverse party or a witness identified with an adverse party, interrogation may be by leading questions. Evid. R. 611(C). Here, it was established that Darryl is appellant's good friend, who considered appellant his cousin. It was also established that appellant was the father of Rakiesha's cousin's baby. In addition, both were changing their stories to benefit appellant. Thus, the trial court could reasonably permit some leading questions.
 {¶ 50} Finally, it must be recognized that Evid. R. 609 specifically provides that its prohibition on impeaching one's own witness does not apply to a statement admitted under Evid. R. 803. Pursuant to Evid. R. 803(5), a statement is not excluded by the hearsay rule even if the declarant is available if the statement is:
 {¶ 51} "Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. * * *" *Page 12 
 {¶ 52} The state asked both witnesses if their memory was better in the weeks after the shooting when they gave their statements than it was at trial, and they both agreed that their memories were better back in July. (Tr. 437, 499). As such, the statements could be admitted under Evid. R. 803(5), which is an exception to the impeachment prohibition in Evid. R. 607(A). See State v. Jackson (2001), 92 Ohio St.3d 436, 448
(regardless of defense counsel's failure to object to state's failure to show surprise and affirmative damage under Evid. R. 607(A), the prosecutor would still have been able to properly introduce the witness's statement under Evid. R. 803(5), as a past recollection recorded). Considering all of the foregoing, there is no error, let alone plain error.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 53} Appellant's fourth assignment of error argues:
 {¶ 54} "THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION INTO EVIDENCE OF A PHOTOGRAPH OF THE VICTIM WHILE ALIVE AND ALLOWING INTO EVIDENCE NUMEROUS GRUESOME PHOTOGRAPHS OF THE VICTIM'S BODY AT THE CRIME SCENE AND NUMEROUS AUTOPSY PHOT[O]S."
 {¶ 55} Application of Evid. R. 403 in relation to the admissibility of photographs is left to the sound discretion of the trial court.State v. Slagle (1992), 65 Ohio St.3d 597, 601. Pursuant to Evid. R. 403(A), relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice. Pursuant to Evid. R. 403(B), relevant evidence may be excluded if its probative value is substantially outweighed by consideration of the needless presentation of cumulative evidence. Evid. R. 403(B).
 {¶ 56} In a noncapital case, such as the one before us, the admission of potentially prejudicial photographs is determined under a balancing test that requires exclusion only if the probative value of the photographs is outweighed by the danger of unfair prejudice. State v.Franklin (1991), 62 Ohio St.3d 118, 125. In capital cases, the Supreme Court is more concerned with repetitious photographs, notwithstanding, Evid. R. 403(B)'s optional "may be excluded" language. Id. Still, even in a capital case, the admission of photographs that are fairly repetitious and are merely shot from *Page 13 
different angles, is not reversible unless the defendant was prejudiced.State v. Davis (1991), 62 Ohio St.3d 326, 348.
 {¶ 57} Appellant complains that the pictures of the body at the crime scene are gruesome, repetitious and inflammatory. Specifically, he points to exhibits 17, 19, 20 and 22. Initially, we point out that the state withdrew exhibits 17 and 22. (Tr. 631). Exhibit 19 is not gruesome. It does appear to be repetitious as it is merely a closer shot from the same angle portrayed in 18. Still, there is nothing prejudicial about the picture itself or about the jury viewing it in addition to 18. See Davis, 62 Ohio St.3d at 348.
 {¶ 58} Exhibit 20 shows the victim up close with eyes open and laying in what was likely blood. Although it may fit the gruesome label more than 19, it does not show the wound and it was dark out. Moreover, it was the only photograph from which an identification of the victim could be made.
 {¶ 59} Although appellant does not raise the other crime scene photographs, which are exhibits 16, 18 and 20, we do note here that viewing the scene from different angles is helpful in a case such as this. The street and neighborhood can be viewed in the background. The state could rationally seek to ensure that the jury understood the context. The direction from which the car came, the street's relationship to the victim and the victim's position are all relevant to whether the shot was fired from the vehicle in which appellant was riding as a front seat passenger.
 {¶ 60} Next, appellant contests the admissibility of the autopsy photographs, specifically pointing to exhibits 35 through 46. However, once again, he apparently failed to review the parties' discussion of and the court's ruling on the exhibits. For instance, defense counsel expressly permitted the admission of exhibit 35, which shows the victim's face. (Tr. 633-634). The state withdrew exhibit 36. (Tr. 633).
 {¶ 61} Defense counsel objected to 39, 40 and 41 but acknowledged that one of the three was appropriate. The state ended up withdrawing 41, and the court struck 39. (Tr. 634). Thus, there is nothing to appeal regarding these three exhibits. In any event, showing the entrance wound is permissible. Photographs illustrating the type of wounds suffered by the victim and those corroborating the testimony of the coroner have significant probative weight that can overcome potential prejudice.State v. *Page 14 Moore (1998), 81 Ohio St.3d 22, 32; State v. Allen (1995),73 Ohio St.3d 626, 636. The number of shots fired, the place where the bullet entered and exited the body and the resulting wounds are all probative of purpose to cause death. State v. Maurer (1984), 15 Ohio St.3d 239, 265.
 {¶ 62} Exhibits 42 and 44 were withdrawn by the state. (Tr. 635). Exhibit 43 is a picture of a long pointer passing through the wound to show the path of the slug into and out of the back of the neck just under the skull. The photograph is somewhat gruesome, as it looks as though the victim has an arrow through his neck. Although it is a regular and necessary practice for the coroner to use such an instrument for his own study, the path could be established to the jury in a less dreadful manner. However, the mere fact that a photograph may have gruesome aspects does not render it inadmissible per se.Maurer, 15 Ohio St.3d at 265. Prejudice to the defense is not established as a result of the jury viewing how the coroner determines projectile path. In any event, defense counsel's objection was merely and expressly to the repetitive nature of 42 and 43. (Tr. 635). When the state withdrew 42, counsel's objection was satisfied.
 {¶ 63} Similarly, in response to defense counsel's objection to the presentation of both 45 and 46, which show the victim's bloody shirt after it was removed from the body, the state withdrew 46. (Tr. 635-636). Thus, counsel's objection to the repetitive nature of the exhibits was satisfied.
 {¶ 64} The only objection the defense lost was whether both 37 and 38 should be permitted as defense counsel believed they were repetitive. However, they are not wholly repetitive as one shows the exit wound straight on and the other shows both wounds at the same time. As stated above, the number of shots fired, the place where the bullet entered and exited the body and the resulting wounds are all probative of purpose to cause death. Maurer, 15 Ohio St.3d at 265. See, also, Moore,81 Ohio St.3d at 32; Allen, 73 Ohio St.3d at 636 (photographs illustrating the type of wounds suffered by the victim and those corroborating the testimony of the coroner have significant probative weight that can overcome potential prejudice).
 {¶ 65} Here, the trial court could have reasonably found that the probative value of these photographs was not substantially outweighed by the danger of unfair *Page 15 
prejudice or the needless presentation of cumulative evidence. See Evid. R. 403(A), (B). As such, the refusal to exclude one of the two exhibits did not constitute an abuse of discretion.
 {¶ 66} Appellant also claims here that the state should not have been permitted to introduce the victim's photograph depicting how he looked in life. Notably, appellant did not object to the photograph, and thus, our review is only for plain error. Regardless, there is no error here. "Nothing in Ohio law precludes a murder victim's relative from identifying photographs of the decedent." State v. Mundt,115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 94-95, citing State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128, ¶ 57 (predeath photo of victim admissible). See, also,State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 116 (holding that a court does not abuse its discretion or prejudice a defendant in admitting a photograph of the victim while alive).
 {¶ 67} Finally, appellant complains here about the testimony of the victim's mother that the victim was respectable, was not a troublemaker and kept to himself. (Tr. 316-317). However, appellant failed to object to the mother's testimony. As such, he waived all but plain error. For all the following reasons, plain error is not apparent.
 {¶ 68} Appellant raises only Evid. R. 403(A) here and contends that the probative value of the testimony was substantially outweighed by the risk of unfair prejudice as it was a pure appeal to emotions. However, considering the testimony that shots were initially fired at the SUV, the mother's testimony was not such an appeal to emotions as she was indicating that it would not have been her son that fired any such shots. This leads to our discussion of Evid. R. 404(A)(2), which appellant does not raise but which states in pertinent part:
 {¶ 69} "Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible * * *."
 {¶ 70} Although it was originally the state who elicited testimony that someone shot at the SUV prior to the SUV firing back, the defense did further elicit evidence from state's witnesses that someone fired at the SUV in front of the apartment complex prior to the SUV turning around for revenge. (Tr. 420, 445, 506). In addition, *Page 16 
it was the defense that first raised the issue of a gunshot residue test on the victim's hands during the testimony of a sergeant with the crime lab. (Tr. 481). The defense then questioned a detective about the gunshot residue test. (Tr. 599-600). The defense also questioned the deputy coroner on the gunshot residue test. He responded that he did not perform the test and he questioned its validity. (Tr. 625).
 {¶ 71} Thus, it is clear the defense had a strategy of suggesting that the victim shot at the SUV when the SUV was trying to get around the van and that the victim could have been pointing his gun at appellant when the SUV turned around and came back down Woodcrest. Evid. R. 404(A)(2) would thus allow the state to offer evidence of the victim's pertinent character traits to rebut that the victim was the first aggressor.
 {¶ 72} The question becomes whether the state presented the evidence prematurely, as the victim's mother was the first witness. Even if the character evidence was premature, prejudice is not indicated because it would have been admissible eventually. This is likely why defense counsel did not object. That is, counsel could properly agree to presentation of the mother's testimony all at once rather than requiring her to be recalled later.
 {¶ 73} In any event, the character evidence would not be considered premature because defense counsel first hinted at this strategy in opening statements when he mentioned tests that were not performed at the crime scene and characterized the state's case as tainted. (Tr. 312-313). See State v. Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 55-56, 64 (withdrawn guilty plea would be inadmissible at trial unless defense counsel opened the door in opening statement); State v Hill
(1996), 75 Ohio St.3d 195, 202 (labeling defense counsel's mention of character evidence in opening as being one method of opening the door). For all of these reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 74} Appellant's fifth assignment of error provides:
 {¶ 75} "THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBITS 3-12 WITHOUT PROPER FOUNDATION."
 {¶ 76} A detective testified that a white Hyundai SUV was discovered abandoned after it had been burned. The vehicle had been stolen a month before the *Page 17 
shooting. State's exhibits 3 through 12 showed the burned out vehicle when it was discovered a few days after the murder.
 {¶ 77} Appellant claims that these exhibits are inadmissible because the detective testified that the vehicle was gone when he arrived at the scene and he received the photographs from the arson investigator who took them. (Tr. 588). Once again, appellant fails to realize what happened during the admission of exhibits.
 {¶ 78} Although the state believed that the detective actually did end up viewing the vehicle, they failed to have him testify to such fact. (Tr. 628). Thus, the state withdrew exhibits 6 through 12 due to defense counsel's argument on lack of foundation. (Tr. 627-629). However, exhibits 3, 4 and 5 were admitted because Antwon Lewis identified the vehicle in the picture as being the vehicle he rode in during the shooting. (Tr. 389, 628). Notably, once this was pointed out, the defense did not further object.
 {¶ 79} Pursuant to Evid. R. 901(A), the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Thus, authentication can occur by testimony of a witness with knowledge that a matter is what it is claimed to be. Evid. R. 901(B)(1). Thus, it is not necessary to present the photographer's testimony in order to authenticate a photograph.State v. Ice, 7th Dist. No. 04BE8, 2005-Ohio-1330, ¶ 14, citingState v. Brooks (1995), 101 Ohio App.3d 260, 264; State v. Baugh (Apr. 22, 1997), 7th Dist. No. 93CA31. See, also, State v. Hannah (1978),54 Ohio St.2d 84, 88.
 {¶ 80} Here, Antwon Lewis testified that he rode in the SUV one or two times prior to the night of the shooting. He voiced that he was certain that the vehicle he and appellant rode in during the shooting was the same vehicle depicted in the picture. (Tr. 389, 417-419). This is sufficient foundation for admission of the photographs. Whether it actually was the vehicle involved in the shooting is a weight of the evidence rather than admissibility of the evidence question. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 81} Appellant's sixth assignment of error provides: *Page 18 
 {¶ 82} "DEFENDANT/APPELLANT WAS PREJUDICED BY THE PIECEMEAL APPROACH OF THE STATE OF OHIO WITH REGARD TO THEIR RESPONSE TO THE DEFENDANT/APPELLANT'S REQUEST FOR DISCOVERY."
 {¶ 83} Appellant was indicted on August 2, 2007. His attorney filed a request for discovery on August 16, 2007. Fourteen days later, the state provided the defense with photographs, the indictment, Youngstown police reports and interviews with Antwon Lewis and Darryl Armstrong. On October 5, 2007, the state provided notice that the autopsy report and death certificate were available, and the defense received these items on October 9, 2007.
 {¶ 84} The state provided its witness list on November 16, 2007. A few days later, the state provided defense counsel with the crime lab evidence log, a crime scene diagram, reports from the Youngstown fire department, five photographs from the fire scene, a car rental packet and the criminal histories of various witnesses. The state also provided notice of correction of a detective's notes regarding Antwon Lewis's statement (as to which Clay occupied which position) and stated that the detective's notes should match Antwon's statement previously provided in discovery.
 {¶ 85} On November 29, 2007, the state provided notice of the Clay's statements upon arrest. On December 3, 2007, the state provided a 911 tape, which the defense had requested at the November 29, 2007 pretrial. On December 4, 2007, the state provided statements of two witnesses and police reports from East Liverpool. The trial began on December 5, 2007.
 {¶ 86} Appellant claims that this "piecemeal" discovery prejudiced his defense by making his counsel unprepared. He cites Crim. R. 16(A), which requires the state to provide discovery "forthwith".
 {¶ 87} However, in the trial court's October 4 joint continuance entry filed after the pretrial held the previous day, the court specifically noted that discovery was ongoing. This entry was signed by both attorneys. Likewise, the defense's discovery response specified that further discovery would be provided when received. Thus, defense counsel engaged in and agreed to what appellant now calls "piecemeal" discovery. *Page 19 
 {¶ 88} Moreover, there is nothing improper about the state providing the discovery it has available instead of waiting to provide anything at all until, for instance, the coroner's report is finished or the crime lab work is complete. The procedure of discovering additional matter is contemplated in Crim. R. 16(D).
 {¶ 89} As to the discovery provided the day before trial, this was the result of interviews with the two witnesses whom appellant had just listed as his alibi witnesses. As such, there is no indication of untimeliness regarding their statements to the East Liverpool police.
 {¶ 90} Regarding the 911 tape provided after the defense's request at the November 29 pretrial, we note that this was merely the tape of the call. The content of the call had already been provided to the defense in the August 30, 2007 information packet. In addition, as will be discussed below, the discussions at the pretrial are unknown, and there is no indication that the defense was prejudiced by the late receipt of the tape under these circumstances.
 {¶ 91} Appellant's main argument here concerns the November 29, 2007 provision of the Clays' statements to police upon their arrest in East Liverpool by the U.S. Marshal's Task Force. The assisting detective from the Youngstown Police Department testified that even though no one mentioned why the Clays were being arrested, they stated that they "didn't shoot that guy."
 {¶ 92} We note that the reason for the late disclosure can be ascertained by the detective's testimony that he did not put the statement in his arrest report. (Tr. 579-580). It thus appears that the prosecutor was not informed of the statement until meeting with the detective to review his testimony before trial. Thus, there is no indication of impropriety.
 {¶ 93} Nor is there any indication of prejudice to the defense. The detective was on the state's witness list. Defense counsel did not object to this late discovery item or suggest in any way that he was surprised by it. Crim. R. 16(E)(3) specifies:
 {¶ 94} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the *Page 20 
material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 95} If counsel does not make argument as to a certain discovery item or if the court does not act sua sponte, then counsel is presumed to have been prepared for trial notwithstanding late disclosure. SeeState v. Gillard (1988), 40 Ohio St.3d 226, 228 (noting that where the defense withdrew its motion for discovery, it waives any sanctions for nondisclosure of a witness's name). The pretrial transcripts were not provided to this court, and thus, we cannot discern if anything relevant was discussed there concerning discovery. Because there is no indication the defense asked for a continuance or sought exclusion of the statement, we cannot find prejudice to the defense. Rather, we presume counsel's preparedness. For all of these reasons, this assignment is overruled.
 ASSIGNMENT OF ERROR NUMBER SEVEN {¶ 96} Appellant's seventh assignment of error contends:
 {¶ 97} "THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION."
 {¶ 98} Whether or not the state presented sufficient evidence is a question of law dealing with adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386. This court must view the evidence in the light most favorable to the state and determine whether any rational trier of fact could find that the elements of the crime have been proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123, 138.
 {¶ 99} The only element contested here is appellant's identity as the perpetrator of the shooting. Most of his arguments in support of this argument concern manifest weight of the evidence, rather than sufficiency. Such issues will be addressed under the next assignment of error corresponding to weight of the evidence. In evaluating sufficiency, we point to our review of the testimony presented in the statement of the case above and reiterate the following major pieces of evidence.
 {¶ 100} A neighbor testified that the shot that hit the victim came from the white SUV. (Tr. 343-344). Antwon Lewis, who was in the back seat of the SUV, testified that appellant fired the shotgun at the victim from the front passenger seat in the SUV, saying, "I got your ass now." (Tr. 390, 403, 409-409). Darryl Armstrong, who also sat *Page 21 
in the back of the SUV, confirmed that appellant sat in the front passenger seat and that he heard a shotgun fired from within the SUV. (Tr. 431, 436). One of the occupants of the van that was bumped by the SUV testified that a big gun was sticking out of the front passenger window just before the shooting. (Tr. 511-512). Another car occupant positively identified appellant as the one carrying the big gun. (Tr. 543-544).
 {¶ 101} A spent shotgun shell was found in the street in front of the murder scene, which shell previously contained a single lead slug as opposed to multiple small pellets. (Tr. 459, 465, 467-468). The victim's wound was consistent with being shot by a single slug. (Tr. 474, 621). Spent wadding from a shotgun was found down the street, implying that a shotgun had recently been fired. (Tr. 459, 483).
 {¶ 102} There was more than sufficient evidence of appellant's identity as the perpetrator. That is, some reasonable person could find that it was appellant who fired the shot that killed the victim. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER EIGHT {¶ 103} Appellant's eighth assignment of error alleges:
 {¶ 104} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 105} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. Thompkins, 78 Ohio St.3d at 387. In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. A reversal on weight of the evidence is ordered only in exceptional circumstances. Id. Additionally, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses). *Page 22 
 {¶ 106} In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. State v.Gore (1999), 131 Ohio App.3d 197, 201. Rather, we defer to the jury who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it, including appellant himself. SeeSeasons Coal Co. v. Cleveland (1994), 10 Ohio St.3d 77, 80; State v.DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 107} Appellant voices some of his concerns with the testimony of the witnesses. He states that Antwon Lewis and Darryl Armstrong were smoking marijuana and drinking alcohol during the hour before the shooting. More accurately, Antwon Lewis admitted to smoking marijuana but testified that he was not drinking. (Tr. 419-420). Likewise, Darryl Armstrong stated that he was high on marijuana but that he took only a few sips of scotch as he does not enjoy drinking alcohol. (Tr. 444-445). He also noted that there was no major drinking occurring. (Tr. 445). In any event, whether Antwon Lewis's identification could be believed in spite of marijuana use is a matter best left for the jury as is credibility in general. Notably, his testimony was supported in many ways by the testimony of others.
 {¶ 108} Appellant also points out that Darryl Armstrong testified that he never saw appellant with the gun and that there was more than one gun being fired. Even if his new story was found to be more credible than his prior statement or than Antwon's testimony, Darryl's new statement still does not preclude appellant from being the shooter.
 {¶ 109} Appellant then relies on Rakiesha Shelton's testimony that it was Jason Clay who retrieved the shotgun from the back of the SUV. However, her carmate testified that she saw appellant with the shotgun, and another carmate confirmed that the big gun was protruding from the front passenger window, where everyone confirmed that appellant was sitting. Antwon Lewis also placed the shotgun in appellant's hands at the time of the shooting. Even if Rakiesha's testimony was found credible, this would not preclude a finding that Jason handed appellant the gun after he got into the SUV. *Page 23 
 {¶ 110} Next, appellant points out that the victim's mother testified that as she ran around the apartment complex upon learning that her son had been shot, she saw two black males running past her with a large gun. (Tr. 323-324). However, it was noted that this had to be several minutes after the shooting and that guns are common in the neighborhood. (Tr. 327, 329). Alternatively, the neighbor testified that a second set of shots had been fired from the SUV as it approached a walkway between the buildings, as if the SUV occupants noticed more targets; this appears to be the same walkway used by the victim's mother after her daughter told her about the first set of shots hitting the victim. (Tr. 322, 344). This could also explain the men she saw as being additional targets. As such, her testimony does not require a finding that one of these men in the walkway was the shooter and that appellant could not be the shooter.
 {¶ 111} Appellant's specific arguments are not convincing, and upon examining the entire record, we have determined that in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER NINE {¶ 112} Appellant's ninth assignment of error alleges:
 {¶ 113} "THE STATE OF OHIO DENIED DEFENDANT/APPELLANT HIS RIGHT TO SUBSTANTIVE DUE PROCESS AND A FUNDAMENTALLY FAIR TRIAL BY FAILING TO DISCLOSE EXCULPATORY EVIDENCE TO TRIAL COUNSEL FOR DEFENDANT/APPELLANT PRIOR TO TRIAL."
 {¶ 114} As set forth in assignment of error number three, Darryl Armstrong testified at variance to and without memory of his statement to police. The state questioned him about his prior statement over no objection by the defense. On cross-examination, the defense elicited from Darryl that he spoke with the prosecutor a few days before testifying. Counsel asked, "And you told him — everything you're telling us right now you told him then — is that right?" Darryl answered in the affirmative. (Tr. 448).
 {¶ 115} Appellant now claims that this demonstrates the state's failure to disclose exculpatory evidence in that Darryl Armstrong's prior statement placed the shotgun in appellant's hands and had appellant saying that he was "loaded up" but *Page 24 
Darryl's trial testimony had himself ducking during the shooting so that he could not see who fired the shot from within the vehicle. Thus, appellant alleges a due process violation under Brady v. Maryland
(1963), 373 U.S. 83.
 {¶ 116} The failure to disclose evidence that is favorable to the accused and material either to guilt or to punishment is a violation of due process. State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128 at ¶ 27, quoting Brady, 373 U.S. at 87. However, this type of evidence is material only if there exists a reasonable probability that the result of the trial would have been different had the evidence been disclosed. Id., citing Kyles v. Whitley (1995), 514 U.S. 419, 433-434.
 {¶ 117} Once again, there was no objection presented on this issue below where the trial court could have conducted an investigation. For the following reasons, we cannot recognize plain error in this scenario. First, Darryl's answer to counsel's question may not mean that he actually informed the state that he was going to deny recollection of parts of his prior statement. Second, Darryl may have been lying that he told the prosecutor on Monday everything to which he testified. Third, Darryl Armstrong was provided as a witness in the state's discovery. Darryl testified that he and appellant are good friends and that he considered appellant his cousin. Due to their close friendship, he could have been interviewed by the defense in preparation for trial.
 {¶ 118} There are many potential factors outside the record here that are not appropriate for direct appeal. In the absence of objection, we cannot presume that the defense did not already know that Darryl was recanting as he may have informed defense counsel or appellant of such fact. This fact would negate prejudice and the element of materiality. Similarly, disclosure of exculpatory evidence has been held sufficient to negate a due process violation where there is time for its effective use. State v. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 82; State v.lacona (2001), 93 Ohio St.3d 83, 100. Where there is no objection by the person with the best knowledge of any effect of the alleged non-disclosure, there is no indication that counsel was hindered in making effective use of Darryl Armstrong's testimony that he could not see who fired the shot because he was ducking. *Page 25 
 {¶ 119} Finally, Darryl's testimony did not exculpate appellant as the shooter; it merely stated that he could not see who the shooter was. SeeLaMar, 95 Ohio St.3d 181 at ¶ 28 (noting that evidence alleged to be withheld did not exculpate defendant), citing State v. Waddy (1992),63 Ohio St.3d 424 (holding evidence not to be material within the meaning of Brady when the evidence did not eliminate the defendant as the perpetrator). Moreover, he did not actually recant his prior statement but rather stated that he did not remember telling police certain things, noting that he was high. For all of these reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TEN {¶ 120} Appellant's tenth assignment of error provides:
 {¶ 121} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."
 {¶ 122} Appellant sets forth multiple claims of prosecutorial misconduct. First, he incorporates his arguments from assignment of error number six regarding "piecemeal discovery" and assignment of error number nine regarding the alleged nondisclosure of exculpatory evidence. These issues were fully discussed supra. Next, he raises seven remarks made by the state in closing.
 {¶ 123} In conducting our review, we initially evaluate whether the prosecutor's remarks were improper. If they are, we then determine whether the remarks prejudicially affected appellant's substantial rights. State v. Treesh (2001), 90 Ohio St.3d 460, 464, citing State v.Smith (1984), 14 Ohio St.3d 13, 14. In general, "the prosecution is entitled to a certain degree of latitude in summation." Id. at 466, citing State v. Grant (1993), 67 Ohio St.3d 465, 482. Moreover, the prosecutor's closing argument may comment with latitude on any reasonable inferences that can be drawn from the evidence presented at trial. Id., citing State v. Smith (1997), 80 Ohio St.3d 89, 111.
 {¶ 124} Even if certain statements during closing were improper, reversal is not warranted if those statements did not "permeate the state's argument so as to deny [the defendant] a fair trial." Id. at 468, citing State v. Landrum (1990), 53 Ohio St.3d 107, 110-113. A substantial right is not affected if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper *Page 26 
comments. Id. at 464, citing Smith, 14 Ohio St.3d at 14. In reviewing statements made in closing, we view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial. Id. at 466, State v. Moritz (1980), 63 Ohio St.2d 150, 157.
 {¶ 125} First, appellant complains that the state mentioned that appellant was arrested in a house involved with drugs. He does not specify what was improper about this statement. At trial, the arresting officer was permitted to testify that he knew the reputation of the house in East Liverpool, that various individuals were jumping from windows at the time of the raid, that appellant and Jason Clay were hiding in the basement and did not surrender for some minutes and that drug paraphernalia was discovered in the house. The point of the prosecutor's reference to the location of the arrest was to make an inference that considering the circumstances of the raid, it was unusual for the Clays' first statements to be that they did not kill anyone. (Tr. 670). The state's inference was not irrational as consciousness of guilt and flight are proper considerations. Alternatively, outcome-determinative prejudice is not apparent. Moreover, no objection was made to the state's initial statements in closing as to the house and its contents. (Tr. 670).
 {¶ 126} Second, appellant complains that the state made reference to facts not in evidence when it mentioned a photographic identification. The prosecutor's closing reviewed the detective's investigation process. In doing so, the prosecutor stated, "He talks to Danielle Catley and takes a statement from her. Has her identify the defendant from photos." (Tr. 671). Later, in rebuttal, in response to the defense's suggestion that the police should have investigated other suspects, the state declared: "All these witnesses are coming in telling him this is who did it, picking him out of photo arrays, picking him out of photos." (Tr. 702).
 {¶ 127} As to the prosecutor's statement about photographic identification in general, appellant fails to recognize that the video-recorded police interview of Darryl Armstrong was played for the jury. (Tr. 452). In that interview, Darryl Armstrong picked appellant out of a six person photographic line-up. Thus, there was in fact direct evidence of photographic identification with regard to this witness. *Page 27 
 {¶ 128} There was also reference at trial to the fact that various individuals "identified" appellant during interviews. For instance, it was established that Danielle Catley identified appellant during her interview. (Tr. 592, 648-649). It seems the state neglected to elicit exactly how the identification was made because photographs were not specifically mentioned as being used to confirm Danielle's identification. See Notice of Correction (showing that Antwon Lewis also identified appellant by photographic array). However, one can rationally infer from the testimony about her interview that identification took place by photographs.
 {¶ 129} In any event, prejudice is not apparent as the people who identified appellant knew him and testified to such fact as they identified him for the jury. For instance, Danielle Catley identified appellant from the stand as the one with the shotgun. (Tr. 543-544). Both Darryl Armstrong and Antwon Lewis testified that they were in the vehicle with the Clays. Antwon testified that appellant used the shotgun to shoot at the victim. (Tr. 408-409). Rakiesha Shelton knew appellant well and identified him as being in the front passenger seat. (Tr. 488, 498). As such, reversible prejudice is not apparent, and once again, there was no objection to the prosecutor's statements. (Tr. 671, 702).
 {¶ 130} Third, appellant complains that the state intimated that the jury should not believe appellant and that they should find him guilty because others thought he was guilty. This argument must also proceed under a plain error analysis as no objections were lodged. Initially, the state made reference to "the everybody-is-lying-but-me defense" and asked the jury to think about how logical and reasonable this defense was. (Tr. 673). Because appellant did not testify, the state was not actually calling him a liar; rather, the state was asking the jury to evaluate whether they believed that the state's main witnesses were lying. This is not improper or prejudicial. When credibility is central, it is proper for the state to comment on such in closing. See State v.Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 99.
 {¶ 131} The prosecutor stated that it was unlikely that the witnesses all got together to trick the detective, adding: "Not only was he tricked but everyone down the line must have been tricked, his supervisors, the city prosecutor, Mahoning County Prosecutor's Office, grand jury. Now is that reasonable? I mean you saw those *Page 28 
people testify." (Tr. 673-674). The point the prosecutor was trying to make is not improper. The issue is with the way the prosecutor went about making his point. Even if it crosses the line of propriety to suggest that the jury should believe the witnesses because, for instance, the grand jury believed them, prejudice is not apparent. SeeState v. Brown, 3d Dist. No. 8-02-09, 2002-Ohio-4755, ¶ 45 (state should not have commented on grand jury's findings, but problem was not plain error). In fact, the court instructed the jury that the fact that an indictment had been filed may not be considered for any purpose other than that it informs the defendant of the charge. (Tr. 709).
 {¶ 132} Fourth, appellant complains that after making the above statements, the prosecutor stated that the police would not risk their careers to "set up" appellant because there is enough crime in Youngstown and declared: "During the course of this trial alone there have been two more murders. We don't need to manufacture crimes." (Tr. 674). Defense counsel objected, and the trial court sustained the objection. Appellant now complains that this appealed to the jurors' fear of crime and that prejudice remained because there was no curative instruction. Once again, the point the prosecutor tried to make may be valid; however, the court is warranting in limiting the reference to other specific murders, which facts are not in evidence. The court did so here by sustaining appellant's objection. A curative instruction wasnot requested, and prejudice is not apparent from the lack of such instruction. See State v. Davie (1997), 80 Ohio St.3d 311, 322 (when court sustains objection, it is incumbent upon the objecting party to request a curative instruction). As such, this argument is overruled.
 {¶ 133} Fifth, appellant states that subtle references were made that the tactics of defense counsel were frivolous. Appellant does not cite to the pages in the transcript where this purportedly occurred. As such, appellant has violated App. R. 16(A)(7) and (D). This allows us to disregard the argument under App. R. 12(A)(2). In any event, a review of the entire closing argument and rebuttal demonstrates no improper characterization of defense counsel's tactics. Rather, the state merely presented arguments, mainly on rebuttal, which deflated each suggestion made by the defense in closing. *Page 29 
 {¶ 134} Sixth, appellant complains that the prosecutor improperly voiced his personal opinion when he stated twice that there was proof beyond a reasonable doubt and even proof beyond all doubt. (Tr. 653, 675). The general rule is that "where personal opinions of guilt are predicated upon the evidence, though frowned upon, they are not deemed to be prejudicially erroneous." State v. Reynolds (1998),80 Ohio St.3d 670, 680-681; State v. Stephens (1970), 24 Ohio St.2d 76, 83. Considering the evidence produced and the entire closing argument here, prejudice is not apparent.
 {¶ 135} Finally, appellant claims that the prosecutor discussed the relationship of the victim and his mother in a manner calculated to inflame the jury. Yet, there is no indication of such tactic in the portions of closing arguments that refer to the victim's mother. (Tr. 659, 694). In conclusion, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER ELEVEN {¶ 136} Appellant's eleventh assignment of error provides:
 {¶ 137} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 138} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 687. Deficient performance is demonstrated by showing counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.State v. Hamblin (1988), 37 Ohio St.3d 153, 156. When reviewing whether counsel's performance was deficient, courts must refrain from second-guessing strategic decisions of trial counsel. State v.Sallie (1998), 81 Ohio St.3d 673, 674. There is a strong presumption that trial counsel's decisions fell within the wide range of reasonable professional assistance. Id. at 674-475. This is partly because a licensed attorney is presumed to execute his duties in a competent manner. State v. Smith (1985), 17 Ohio St.3d 98, 100.
 {¶ 139} To establish prejudice, a defendant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 142, citing Strickland, 466 U.S. at 694. A reasonable probability is that sufficient to undermine our confidence in the *Page 30 
outcome of the case. Id. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith,17 Ohio St.3d at 100.
 {¶ 140} Appellant raises various claims of ineffective assistance. First, he refers to his contentions in assignment of error number three that the state should not have been permitted to impeach its own witness by using his prior statement. Counsel failed to object to this procedure or the playing of the DVD containing Darryl Armstrong's interview. We refer to our discussion of the propriety of the introduction of Darryl's prior statement within assignment of error number three. Based upon this, prejudice from the lack of objection is not apparent as the court could have overruled the objection. We also reiterate that counsel may have had information (from his client by way of his client's friend, Darryl) that made objection futile. In such case, failing to object could be a trial tactic used to avoid looking as though the defense wishes to hide something. Thus, deficiency in representation is not apparent.
 {¶ 141} Second, appellant refers to assignment of error number ten and claims that counsel was ineffective in failing to object to various instances of prosecutorial misconduct. We note, however, that defense counsel did object four times during the prosecutor's closing argument and multiple times during the prosecutor's rebuttal. As for those instances that defense counsel did not object, deficient performance is not apparent. Limiting objection during closing is a trial tactic to avoid trying to draw attention to statements. Moreover, in reviewing our analysis in the prior assignment of error, prejudice is lacking.
 {¶ 142} Finally, appellant urges that defense counsel should have raised an issue regarding the state's November 23, 2007 Notice of Correction of the detective's notes of his interview with Antwon Lewis that were provided in discovery. The state pointed out that during the interview, Antwon Lewis identified Jason Clay as the driver and appellant as the passenger/shooter. The state recognized that the detective's notes inadvertently have the names switched.
 {¶ 143} In drafting his brief, appellant has misread the state's Notice of Correction as his argument is based upon a contention that the notice corrected the notes to read that appellant was the driver rather than the shooter. However, as outlined above, this is not what the notice said. Since appellant's contention here is *Page 31 
based upon his erroneous belief that the notes were being corrected in a favorable way, this argument is without support.
 {¶ 144} In any event, defense counsel had previously been provided with the DVD containing the interview of Antwon Lewis, which would have shown the exact statement of Antwon Lewis. There was no need to object to the amendment of notes on Antwon Lewis's statement to match Antwon Lewis's own words contained on the DVD.
 ASSIGNMENT OF ERROR NUMBER TWELVE {¶ 145} Appellant's twelfth assignment of error alleges:
 {¶ 146} "THE TRIAL COURT'S JURY INSTRUCTIONS WERE INCOMPLETE, MISLEADING AND/OR INCORRECT."
 {¶ 147} First, appellant notes the difference between innocent and not guilty and claims that the trial court misinstructed the jury during voir dire and during final instructions. Specifically, appellant complains about the following statement the court made during voir dire:
 {¶ 148} "the defendant has entered a plea of not guilty, and it will be a question of his innocence or guilt of the charge that you will be asked to decide if you are selected as a trial juror in this case." (Tr. 37).
 {¶ 149} We note that the court later stated in voir dire:
 {¶ 150} "the defendant is presumed to be innocent, and before being found guilty, the prosecutor must prove his guilt beyond a reasonable doubt, and if a jury has a reasonable doubt, then that person must be acquitted or found not guilty." (Tr. 48).
 {¶ 151} Appellant also complains about the following statement the court made during the final jury instructions:
 {¶ 152} "If your verdict is guilty, stop. If your verdict is not guilty, stop. * * * You may not discuss or consider the subject of punishment. Your duty is confined to the determination of guilt or innocence of the defendant * * *." (Tr. 737).
 {¶ 153} We note that the court had previously instructed:
 {¶ 154} "A plea of not guilty has been entered, and that's a denial of the charges or charge and puts in issue all the essential elements of each offense that is charged. *Page 32 
 {¶ 155} "A defendant is presumed innocent unless guilt is established beyond a reasonable doubt. The defendant must be acquitted of the charge or charges unless the state produces evidence that convinces you beyond a reasonable doubt of each and every element * * *." (Tr. 710).
 {¶ 156} The court then defined reasonable doubt. (Tr. 710-711). The court also had explained that if the jury found the state failed to prove beyond a reasonable doubt any of the elements, then they must find appellant "not guilty". (Tr. 720).
 {¶ 157} Defense counsel did not object to either of the statements now being contested. Crim. R. 30(A) specifically provides:
 {¶ 158} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 {¶ 159} Thus, our review is for plain error. See Crim. R. 52(B) (plain error may be recognized where substantial rights are affected). In conducting our review, we emphasize that "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." State v. Price (1979),60 Ohio St.2d 136, ¶ 4 of syllabus.
 {¶ 160} As to the court's comment at voir dire about innocence or guilt, this was mitigated by subsequent comments regarding the presumption of innocence, the state's burden of proof and the obligation to find the defendant not guilty upon insufficient proof. Moreover, "the judge's shorthand references to legal concepts during voir dire cannot be equated to final instructions given shortly before the jury's penalty deliberations." State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 203-204 (where trial court said at voir dire that death penalty is available if aggravating outweighed mitigating circumstances but where court should have said state must prove aggravating outweighed mitigating circumstances beyond a reasonable doubt).
 {¶ 161} Regarding the trial court's final jury instructions contained on page 737 of the transcript, the Supreme Court has held: "At most, the use of the phrase `guilt or innocence' in this limited context relating to punishment is totally inconsequential." State v. Coley (2001),93 Ohio St.3d 253, 267-268. See, also, State v. Jones, 91 Ohio St.3d 335,348-349; State v. Campbell, 90 Ohio St.3d 320, 341. As such, considering *Page 33 
the entire jury instructions and the context of the contested instructions, reversible prejudice from the court's statements does not exist.
 {¶ 162} Next, appellant argues that the trial court erred in failing to instruct the jury that Darryl Armstrong's prior inconsistent statement was introduced only for impeachment purposes, not to prove the truth of the matter asserted. When the state introduces evidence for a limited purpose, the defendant must request a limiting instruction or any error is waived. State v. Grant (1993), 67 Ohio St.3d 465, 472. Thus, as appellant acknowledges, we are conducting only a plain error review here.
 {¶ 163} The lack of a limiting instruction regarding a prior inconsistent statement is often held not to constitute plain error. See, e.g., State v. Burruss (Dec. 22, 1995), 6th Dist. No. L-94-369;State v. Colvin (Mar. 13, 1995), 12th Dist. No. CA94-04-092. Here, Darryl Armstrong's prior statement was not the main evidence against appellant. There was also the following: the testimony of Antwon Lewis identifying appellant as the shooter; Darryl's testimony placing appellant in the front passenger seat and placing the shot as coming from inside the vehicle; the testimony of Danielle Catley placing the shotgun in appellant's hands; the testimony of Ladonna Shinn stating that the shotgun was coming from the front passenger window; and, testimony of officials concluding that the victim's wound was consistent with a shotgun slug and that a spent shell which once contained such a slug was found in the street. Thus, plain error is not apparent.
 {¶ 164} In any case, we point to our analysis within assignment of error number three regarding the use of the statement as a prior recollection recorded, which would not be subject to the limitinginstruction appellant now desires. See Evid. R. 609, 803(5). See, also,State v. Jackson (2001), 92 Ohio St.3d 436, 448; State v. Rutlowski (May 31, 1995), 9th Dist. No. 94CA005831. In accordance, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER THIRTEEN {¶ 165} Appellant's thirteenth assignment of error contends:
 {¶ 166} "THE STATE OF OHIO FAILED TO PROVE BEYOND A REASONABLE DOUBT THE GUN SPECIFICATION ATTACHED TO THE INDICTMENT." *Page 34 
 {¶ 167} The firearm specification here requires the imposition of a mandatory five-year prison term upon an offender for committing a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home. R.C. 2941.14(A). See, also, R.C. 2929.14(D)(1)(c).
 {¶ 168} Appellant states that no gun was introduced into evidence and claims that the state failed to sufficiently establish that the gun was operable at the time of the offense. He relies on a Supreme Court case applying the regular firearm specification statutes, R.C. 2923.11(B) and2929.71(A). State v. Gaines (1989), 46 Ohio St.3d 65. The Court held that, prior to imposition of an additional term of three years of actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense. Id. at 68-69.
 {¶ 169} However, we need not resort to the Gaines holding because that case dealt with the mere specification for possession of a firearm. This case deals with a firearm specification that specifically requires "discharge" of a firearm; obviously, if he discharged it, then it was operable. Thus, appellant's argument here can merely be that he did not discharge the firearm. This argument regarding his identity as the shooter was already addressed in his sufficiency assignment of error above. As such, this argument is without merit.
 ASSIGNMENT OF ERROR NUMBER FOURTEEN {¶ 170} Appellant's fourteenth assignment of error contends:
 {¶ 171} "THE DEFENDANT/APPELLANT'S SENTENCE WAS NOT PROPORTIONAL RELATIVE TO HIS CONDUCT AND THEREFORE THE SENTENCE IS CONTRARY TO LAW."
 {¶ 172} Appellant notes that there were four sentences from which the trial court had to choose regarding the aggravated murder offense: life without parole; life with parole eligibility after thirty years; life with parole eligibility after twenty-five years; and, life with parole eligibility after twenty years. See R.C. 2929.03(A)(1). The court sentenced him to thirty years to life as recommended by the state, but appellant *Page 35 
believes only a minimum sentence was proper. In support, he points to the perceived low quality of the evidence. He also points to R.C. 2929.14(E)(4) and claims that despite Foster, a trial court should still state reasons to support the sentence.
 {¶ 173} Firstly, R.C. 2929.14(E)(4) refers to consecutive sentences on multiple offenses. See R.C. 2929.14(E)(1)(a) and (4). Here, appellant was given one discretionary sentence for the offense of aggravated murder and one mandatory additional term on a specification. R.C. 2929.14(E)(1)(a) is explicitly applicable to the mandatory, additional term for discharging a firearm from a motor vehicle, and discretion is not used regarding the consecutive nature of the sentences. See, also, R.C. 2929.14(D)(1)(c). Consequently, R.C. 2929.14(E)(4) would be inapplicable even if it was still a valid provision, which it is not. That is, the Supreme Court has specifically held that R.C. 2929.14(E)(4) is unconstitutional. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 83. Thus, it was severed and excised. Id. at ¶ 97. The provisions regarding deviation from the minimum were also severed and excised. Id. (holding that R.C. 2929.14(B), concerning deviation from the minimum, would be severed and excised because it no longer had meaning).
 {¶ 174} As to appellant's mention of a proportionality review, he may have intended to cite R.C. 2929.11, which lists the purposes and principles of sentencing, and R.C. 2929.12, which requires a sentencing court to consider the seriousness and recidivism factors. Where the court expressly states that it considered the factors in R.C. 2929.11
and 2929.12, then the court satisfies is duty under those statutes.State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18 (three justices holding that there is a presumption from a silent record and that express statement of consideration of these factors is sufficient), ¶ 37 (one justice disagreeing with presumption from silent record but agreeing that trial court's reference to statutes is sufficient), ¶ 59 (three justices not actually stating position on this topic as standard of review was key issue).
 {¶ 175} Here, the trial court's judgment entry stated that it balanced the seriousness and recidivism factors under this statute. Thus, the court satisfied its duty under R.C. 2929.11 and 2929.12. See id. See, also, State v. Arnett (2000), 88 Ohio St.3d 208, 215 (court need not use specific language or make specific findings on *Page 36 
record to evince requisite consideration of seriousness and recidivism factors); State v. Jones, 7th Dist. No. 04MA76, 2005-Ohio-6937, ¶ 39.
 {¶ 176} Furthermore, there is no indication that the sentence was an abuse of discretion or was otherwise contrary to law. See State v.Gray, 7th Dist. No, 07MA156, 2008-Ohio-6592, ¶ 12-17; State v.Mann, 7th Dist. No. 08JE12, 2008-Ohio-6365, ¶ 19-24, citing and applyingState v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912. Although he had no prior felonies of record, he was a young man and did have two prior misdemeanor offenses. The court heard the facts of the case at trial. The state pointed to indications within that trial testimony of a lack of remorse. Appellant was sentenced within the allowable ranges. SeeKalish, 2008-Ohio-4912 at ¶ 15-16, citing Payne, 114 Ohio St.3d 502
at ¶ 25 (full discretion to impose a sentence within the statutory range). Thirty years to life was less than a maximum sentence and more than the minimum.
 {¶ 177} Contrary to appellant's contention, he was not entitled to a minimum sentence based upon his allegation of low quality evidence. In fact, the evidence against him was strong, as analyzed in his assignments of error dealing with sufficiency and weight. Finally, we note that the state urges that his sentence was not shocking to a reasonable person. However, appellant does not raise this constitutional argument, and regardless, the state analysis would be correct. SeeState v. Goins, 7th Dist. No. 06MA131, 2008-Ohio-1170. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FIFTEEN {¶ 178} Appellant's fifteenth assignment of error alleges:
 {¶ 179} "THE TRIAL COURT'S IMPOSITION OF ITS SENTENCE IN THE PRESENT CASE IS CONTRARY TO LAW AND/OR VIOLATES THE MANDATES OF ORC 2929.13(A)."
 {¶ 180} R.C. 2929.13(A) provides in pertinent part:
 {¶ 181} "Except as provided in division (E), (F), or (G) of this section and unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court that imposes a sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in *Page 37 
sections 2929.14 to 2929.18 of the Revised Code. The sentence shall not impose an unnecessary burden on state or local government resources. * * *."
 {¶ 182} Appellant contends that his sentence is unnecessarily burdensome to state and local government resources in violation of R.C. 2929.13(A) and complains that the court failed to make findings regarding this consideration. First, there is no requirement that the court make findings regarding the burden to government resources. Second, there is no indication that appellant's sentence for aggravated murder is unduly burdensome to government resources. A sentencing court need not elevate resource conservation above the balance of seriousness and recidivism factors. State v. Wolfe, 7th Dist. No. 03CO45,2004-Ohio-3044, ¶ 15. See, also, Goins, 7th Dist. No. 06MA131 at ¶ 35 (benefit to society that defendant is not free to reoffend).
 {¶ 183} More importantly, R.C. 2929.13(A) is introduced by the admonition, "[e]xcept as provided in division (E), (F), or (G) * * *." Thus, division (A) is inapplicable to scenarios encompassed in divisions (E) through (G). Specifically, division (F) provides in relevant part:
 {¶ 184} "Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under sections 2929.02 to2929.06 * * * for any of the following offenses: (1) Aggravated murder when death is not imposed or murder * * *."
 {¶ 185} Appellant was convicted of aggravated murder, death was not imposed, and he was sentenced pursuant to R.C. 2929.03. Thus, R.C. 2929.13(A) is inapplicable. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER SIXTEEN {¶ 186} Appellant's sixteenth assignment of error urges:
 {¶ 187} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AS SET FORTH HEREIN."
 {¶ 188} Appellant contends that even if each single error alleged in his assignments of error is not worthy of reversal, the cumulative effect of these errors denied him a fair trial. Errors do not become prejudicial "by sheer weight of numbers." State v. Hill (1996),75 Ohio St.3d 195, 212. Cumulative error may only be found when the effect of multiple errors, individually found to be harmless, acts to deprive the *Page 38 
defendant of his constitutional right to a fair trial. State v.Garner (1995), 74 Ohio St.3d 49, 64. It has been held that an assignment of error that simply invokes the phrase "cumulative error" is not analysis or argument and thus constitutes an assignment of error without substance. See State v. Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 197.
 {¶ 189} Appellant's argument here is lacking in substance as it merely points to the other assignments of error, intones the phrase "cumulative error" and defines the relevant law on the doctrine. See id. Even if we take the arguments within other assignments that bordered on error and find in favor of appellant for the sake of argument, the cumulative error doctrine would not permit reversal of appellant's conviction. That is, even if there are some instances of harmless error, the combination of any issues with photographs, closing argument or counsel's lack of objection did not deprive appellant of a fair trial. This assignment of error is overruled.
 {¶ 190} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs. *Page 1