OPINION
{¶ 1} Defendant-appellant, James Goins (Goins), appeals his maximum, consecutive prison sentences totaling eighty-four years rendered by the Mahoning County Common Pleas Court for multiple counts including attempted aggravated murder, aggravated burglary, aggravated robbery, kidnapping, felonious assault, and receiving stolen property. Goins was resentenced upon remand from the Ohio Supreme Court following its decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470. The two issues on appeal are: (1) whether the sentence violates theEighth Amendment's prohibition against cruel and unusual punishment and (2) whether the sentence imposes an unnecessary burden on state or local government resources contrary to R.C. 2929.13(A).
 {¶ 2} Goins' conviction arose from events which occurred on January 29, 2001.[1] Goins, along with codefendant Chad Barnette (Barnette), attacked William Sovak, age 84, as he was picking up his daily newspaper outside his home in Youngstown, Ohio. Goins and Barnette were both juveniles at the time. They pushed Mr. Sovak back into his home, repeatedly hit and kicked him, and knocked him to the ground many times. During this melee, they hit Mr. Sovak on the head with his telephone, causing serious injury. They forced Mr. Sovak to his kitchen where they found a set of keys, which they took. They then pushed Mr. Sovak down the stairs to his basement, where he passed out. The assailants dragged Mr. Sovak to a fruit cellar storage room in the basement and locked the door so that he could not escape. Later that evening, a neighbor of Mr. Sovak telephoned Jerome Jablonski (the victim's half-brother) to report that there was blood all over Mr. Sovak's house. Mr. Jablonski and his brother went to the house and found a trail of blood from the front door to the basement. Mr. Jablonski broke the lock on the fruit cellar and found Mr. Sovak inside, who had sustained a punctured lung, broken ribs and other broken *Page 3 
bones.
 {¶ 3} Also on January 29, 2001, Louis Luchisan, age 64, and his wife Elizabeth, were in their home in the same neighborhood as Mr. Sovak. Mr. Luchisan, who is confined to a wheelchair, had been working at his computer when two assailants kicked in the side door of his house. One of the men was carrying a firearm, which Mrs. Luchisan described as a sawed-off rifle or shotgun. The two assailants threatened to shoot the Luchisans if they did not give them some money. They hit Mr. Luchisan over the head with a plate, and Mrs. Luchisan saw blood flowing down her husband's head from the wound. Goins and Barnette took Mrs. Luchisan to different rooms in the house looking for money. Mrs. Luchisan gave them about $167, while Mr. Luchisan gave them $20. Goins and Barnette also hit Mrs. Luchisan with a telephone, and threatened to kill her. She eventually had to have staples put into her head as a result of the injuries.
 {¶ 4} Just before the attackers left, Mrs. Luchisan heard a car horn beeping, indicating that a third assailant was waiting outside. Goins and Barnette took the keys to Mr. Luchisan's car, a blue Chevy Malibu. They stole the car and a 27-inch television from the Luchisan's home.
 {¶ 5} The police were notified to be on the lookout for the stolen vehicle. The car was spotted as the police were still inspecting the two crime scenes. Officer Joshua M. Kelly, who was on foot, saw the vehicle and pulled out his service firearm. The car suddenly veered and crashed into a tree. There were four people in the car, including Goins in the front passenger seat. Officers also found a sawed-off rifle in the vehicle, similar in appearance to the weapon used at the Luchisan home. Goins fled from the car after the crash, and was captured soon afterward.
 {¶ 6} Police found a blue denim jacket in Goins' home. In the jacket pocket they found the keys to the Sovak's house. They also confiscated the clothing that Goins was wearing when he was captured, and blood analysis was later performed on that clothing. *Page 4 
 {¶ 7} During the investigation the police photographed footprints left in the snow outside both Mr. Sovak's and Goins' residences. The police also examined footprints from the Formica floor in Mr. Sovak's home, as well as a footprint left on the door of the Luchisans' house where it had been kicked in. The shoes of both Goins and Barnette were seized by the police. The tread on those shoes was found to match shoe tread marks left at the crime scene.
 {¶ 8} On February 5, 2001, a juvenile delinquency complaint was filed against Goins alleging twelve counts, including attempted murder, aggravated burglary, aggravated robbery, kidnapping, felonious assault, and receiving stolen property. The State filed a motion to transfer the case to the adult division of the Mahoning County Court of Common Pleas. On February 22, 2001, the court held a bindover hearing in which it found probable cause for all the offenses except for the kidnapping charges. The court held that the mandatory bindover provisions of R.C.2151.26 applied to the charges of attempted aggravated murder, the aggravated burglary of the Luchisans, the aggravated robbery of Mr. Luchisan, and the aggravated robbery of Mrs. Luchisan. The juvenile court then bound the entire case over to the Mahoning County Grand Jury.
 {¶ 9} On March 22, 2001, the Mahoning County Grand Jury indicted Goins on the following charges: 1) attempted aggravated murder of Mr. Sovak; 2) aggravated burglary of Mr. Sovak; 3) aggravated robbery of Mr. Sovak; 4) kidnapping of Mr. Sovak; 5) aggravated burglary of the Luchisans; 6) aggravated robbery of Mr. Luchisan; 7) aggravated robbery of Mrs. Luchisan; 8) kidnapping of Mr. Luchisan; 9) kidnapping of Mrs. Luchisan; 10) felonious assault of Mr. Luchisan; 11) felonious assault of Mrs. Luchisan; 12) and receiving stolen property. Four of the counts contained gun specifications. The court consolidated the matter with the criminal case proceeding against codefendant Chad Barnette.
 {¶ 10} On November 28, 2001, Goins and Barnette filed writs of habeas corpus with this Court, challenging whether the Mahoning County Court of Common Pleas, General Division, had jurisdiction over criminal charges that were not bound *Page 5 
over from the juvenile division. Goins v. Wellington, 7th Dist. Nos. 01 CA 208, 01 CA 210, 2001-Ohio-3503. This court denied both writs on December 18, 2001, and the case proceeded to a jury trial beginning on March 4, 2002.
 {¶ 11} On March 12, 2002, the jury found Goins guilty of all counts except for one count of felonious assault against Mr. Luchisan. The jury also found Goins guilty of the gun specifications in counts six, seven, eight and nine.
 {¶ 12} A sentencing hearing was held on March 20, 2002. The trial court filed its judgment on March 21, 2002. The court sentenced Goins to the maximum prison terms on each count, and to three years in prison on each gun specification. The court held that the kidnapping charges merged with robbery charges. The court also determined that all remaining sentences must be served consecutively to each other, for a total of 85 1/2 years in prison.
 {¶ 13} Goins appealed his conviction and sentence to this court, asserting six assignments of error. Concerning Goins' sentence, this court determined that he could not be sentenced for both aggravated robbery and receiving stolen property that involved the same stolen property. This court also found that the trial court failed to make the required findings to justify imposing the maximum prison sentence for the aggravated robbery of Mr. Sovak. Accordingly, Goins' eighteen-month prison sentence on the charge of receiving stolen property (count twelve in the indictment) was modified to run concurrently with the sentences for the remaining counts. Goins' prison sentence on the charge of aggravated robbery (count three in the indictment) was reduced to three years in prison, to run concurrently with the sentences on the remaining counts. Goins total prison sentence was modified to an aggregate of seventy-four years in prison.
 {¶ 14} Goins had also argued that the maximum consecutive sentences violated his right to jury trial under Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. In accordance with established precedent in this appellate district at the time, State v. Barnette, 7th Dist. No. 02 CA 65, 2004-Ohio- *Page 6 
7211, this court rejected that particular argument and affirmed the trial court's conviction and sentence in all other respects. State v.Goins, 7th Dist. No. 02 CA 68, 2005-Ohio-1439.
 {¶ 15} Both Goins and the State appealed this court's decision to the Ohio Supreme Court in case No. 2005-0809. State v. Goins,106 Ohio St.3d 1503, 2005-Ohio-4605, 833 N.E.2d 1246. Goins again asserted that the maximum consecutive sentences violated his right to a jury trial underBlakely and Apprendi. The Ohio Supreme Court vacated Goins' sentence in accordance with State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470. In re Ohio Criminal Sentencing Statutes Cases,109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174.
 {¶ 16} The trial court resentenced Goins on August 2, 2006. For counts one through five (attempted aggravated murder, aggravated burglary, aggravated robbery, kidnapping, aggravated burglary), the trial court sentenced Goins to ten years in prison on each. For counts six through nine (aggravated robbery, aggravated robbery, kidnapping, kidnapping), the court sentenced Goins to ten years in prison on each, plus three years on each for the gun specification. The court held that the kidnapping charges merged with the robbery charges. The court also sentenced Goins to eight years in prison on count eleven (felonious assault). Lastly, the court ordered that all the sentences be served consecutively for an aggregate prison term of eighty-four years. This appeal followed.
 {¶ 17} Goins' first assignment of error states:
 {¶ 18} "THE TRIAL COURT IMPOSED CRUEL AND UNUSUAL PUNISHMENT UPON DEFENDANT-APPELLANT JAMES GOINS IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT SENTENCED HIM TO A TERM OF EIGHTY-FOUR YEARS OF IMPRISONMENT, EFFECTIVELY A LIFE SENTENCE WITHOUT THE POSSIBILITY IF PAROLE. (JUDGMENT ENTRY OF SENTENCE, AUGUST 7, 2006)."
 {¶ 19} The Eighth Amendment to the Constitution of the United States and *Page 7 
Section 9, Article I of the Ohio Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In State v. Weitbrecht (1999),86 Ohio St.3d 368, 370-371, the Ohio Supreme Court observed:
 {¶ 20} "Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts.Robinson v. California (1962), 370 U.S. 660, 676, 82 S.Ct. 1417, 1425,8 L.Ed.2d 758, 768. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed. In McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 30 O.O.2d 38,203 N.E.2d 334, this court stressed that Eighth Amendment violations are rare. We stated that `[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.'Id. at 70, 30 O.O.2d at 39, 203 N.E.2d at 336. Furthermore, `the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.' Id. See, also, State v. Chaffin (1972),30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus."
 {¶ 21} In order to determine whether the sentence imposed is disproportionate to the offense committed, a tripartite analysis is employed. "First, we look to the gravity of the offense and the harshness of the penalty * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." Id., quoting Solem v. Helm (1983), 463 U.S. 277,290-291, 103 S.Ct. 3001, 77 L.Ed.2d 637.
 {¶ 22} A reviewing court need not reach the second and third prongs of the tripartite test except in the rare case when a threshold comparison of the crime *Page 8 
committed and the sentence imposed lead to an inference that the two are grossly disproportionate. Weitbrecht at 373, fn. 4, citing Harmelin v.Michigan (1991), 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836, (Kennedy, J., concurring); State v. Keller (June 1, 2001), Montgomery App. No. 18411.
 {¶ 23} Here, Goins appears to at first advance a proportionality argument. However, perhaps because of the brutal nature in which his offenses were carried out, Goins makes no attempt to examine the gravity of the offense in relation to the harshness of the penalty. Consequently, it does not appear that this is the type of rare case where a threshold comparison of the crime committed and the sentence imposed lead to an inference that the two are grossly disproportionate.
 {¶ 24} Rather, Goins argues that he was effectively handed a life sentence since he will never be eligible for parole and will be one-hundred years old when his sentence is completed. Goins points out that Ohio reserves a life imprisonment sentence for only the offenses of murder and rape of a child less than thirteen years of age. Although Goins' victims included three elderly people, he stresses that no one was killed and none of the offenses for which he was convicted involved children.
 {¶ 25} For those offenses for which life imprisonment is an available sentence, Goins emphasizes that even in those instances, the offenders become eligible for parole. He will have no such chance, he contends. To illustrate his point, Goins cites State v. Vlahopoulos,154 Ohio App.3d 450, 2003-Ohio-5070, 797 N.E.2d 580. Vlahopoulos was convicted of three counts of rape and sentenced to nine years to life imprisonment on each count, to be served consecutively. On appeal, Vlahopoulos argued that since he was forty-nine years old at the time, the sentence amounts to a sentence of life imprisonment without the possibility of parole. Addressing this argument, the Eighth District Court of Appeals observed:
 {¶ 26} "The flaw with Vlahopoulos's argument is that he neglects to consider that he was sentenced to an indefinite term of incarceration. While it may be that were he denied parole on any of the individual offenses it would amount to a life *Page 9 
sentence, the fact remains that he is eligible for release on the nine-year minimum sentences. Since it is far from certain that he will remain in prison for the rest of his natural days, we cannot say that the sentence amounted to a term of life without parole." Id. at ¶ 3. See, also, McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 30 O.O.2d 38,203 N.E.2d 334 (sentence of one to twenty years for operating motor vehicle without owner's consent was not cruel and unusual punishment, where person convicted would have been eligible for parole after serving ten months).
 {¶ 27} Goins' argument in this regard is misguided for it belies the serious nature of his offenses. Goins ignores the sheer number of violent, felony offenses for which he was convicted. And, as indicated earlier, he conveniently does not address the brutal nature in which the offenses were carried out and how his sentence might compare to that of other criminal defendants similarly situated.
 {¶ 28} We addressed a similar argument advanced by Goins' codefendant, Chad Barnette in State v. Bamette, 7th Dist. No. 06 MA 135,2007-Ohio-7209. Barnette was convicted of the same crimes as Goins and received the same eighty-four year sentence. In Barnette, this Court observed:
 {¶ 29} "Although [Barnette] urges that his total sentence of eighty-four years is constitutionally too high, this is a conclusory allegation with no factual argument or support. Considering the facts of the offenses, the sentences are not so greatly disproportionate to the offenses so as to shock the sense of justice in the community. SeeWeitbrecht, 86 Ohio St.3d at 371.
 {¶ 30} "It was found by a jury that [Barnette] purposely tried to kill an elderly victim of a burglary and that [Barnette] locked him up hoping to ensure his death. This was not an isolated event as he continued his rampage at a nearby house where he terrorized a disabled man and his wife. [Barnette] was a juvenile, but he already had a sizeable and related criminal record. As such, it was not unreasonable for the trial court to determine that the savage occurrences in the case at hand establish that [Barnette's] persona was too tainted for rehabilitation and that he required long-term incarceration to protect the community from his flawed sense of *Page 10 
entitlement. This is not the rare case where the cruel and unusual punishment argument merits consideration." Id. at ¶ 43-44. These observations apply equally to Goins.
 {¶ 31} Accordingly, Goins first assignment of error is without merit.
 {¶ 32} Goins' second assignment of error states:
 {¶ 33} "THE TRIAL COURT ERRED WHEN IT IMPOSED A SENTENCE OF EIGHTY-FOUR YEARS OF IMPRISONMENT UPON DEFENDANT-APPELLANT JAMES GOINS, AS THIS SENTENCE WILL UNNECESSARILY BURDEN OHIO'S RESOURCES IN VIOLATION OF R.C. § 2929.13(A). (JUDGMENT ENTRY OF SENTENCE, AUGUST 7, 2006).
 {¶ 34} R.C. 2929.13(A) provides that a felony "sentence shall not impose an unnecessary burden on state or local government resources."
 {¶ 35} "Just what constitutes a `burden' on state resources is undefined by the statute, but the plain language suggests that the costs, both economic and societal, should not outweigh the benefit that the people of the state derive from an offender's incarceration. Some have argued that in cases where the multiple life tails might be involved, incarceration of aged offenders who require the kind of nursing care needed by elderly people might place a burden on the state's resources. Of course this is true, but it is only one type of cost associated with incarceration. The court must also consider the benefit to society in assuring that an offender will not be free to reoffend. Many people sleep better at night knowing that certain offenders are incarcerated. They would no doubt consider a lengthy incarceration worth the cost of housing those offenders." State v.Vlahopoulos, 154 Ohio App.3d 450, 2003-Ohio-5070, 797 N.E.2d 580, at ¶ 5.
 {¶ 36} Goins argues that the costs to the State of Ohio far outweigh the benefit to the public in keeping him incarcerated for eighty-four years. He states that those costs include his food, medical care, and maintenance. He implies that his offenses were largely a product of his youth and immaturity and that as he progresses into middle and old age the public will benefit little from his incarceration. *Page 11 
 {¶ 37} Again, as with Goins' first assignment of error, he is unable to explain away the brutal nature of his offenses. He and Barnette viciously beat three elderly victims, leaving all with grave injuries and one of them for dead. Given Goins' juvenile record and the depraved state of mind required for the commission of these offenses, it cannot be said that the public, and primarily its safety, would not benefit from having Goins incarcerated for eighty-four years.
 {¶ 38} Accordingly, Goins' second assignment of error is without merit,
 {¶ 39} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
[1] The majority of the underlying facts and procedural history of this case are borrowed verbatim from this Court's decision in State v.Goins, 7th Dist. No. 02 CA 68, 2005-Ohio-1439. *Page 1