[Cite as *State v. Grillon*, 2012-Ohio-893.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10 CO 30 |
| | ) | |
| DAVID GRILLON, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Court of Common
                              Pleas of Columbiana County, Ohio
                              Case No. 08CR322

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiff-Appellee        Robert L. Herron
                              Prosecutor
                              John E. Gamble
                              Assistant Prosecutor
                              105 South Market Street
                              Lisbon, Ohio 44432

For Defendant-Appellant       Attorney Douglas A. King
                              91 West Taggart St., P.O. Box 85
                              East Palestine, Ohio 44413

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: March 1, 2012

DONOFRIO, J.

{¶1}    Defendant-appellant, David Grillon, appeals from a Columbiana County Common Pleas Court judgment convicting him of four counts of felony theft and one count of misdemeanor theft, following a jury trial, and the resulting sentence.

{¶2}    This case arises from five separate transactions in which appellant was involved.

{¶3}    The first transaction occurred on February 4, 2008, when appellant went into the East of Chicago Pizza shop in Lisbon and approached owner, Mark Passerotti about holding a car show every week in his parking lot from April through September.  Passerotti agreed and gave appellant $750, which appellant promised he would get back.  When the time to start the car shows grew near, Passerotti contacted appellant, who told him that he had to cancel the first show.  Appellant then gave various reasons why he could not hold the subsequent car shows. Ultimately, appellant did not put on any car shows and did not refund Passerotti's money.

{¶4}    The second transaction occurred on February 25, 2008, when appellant approached Robert Gresh, owner of Calcutta Auto Parts in East Liverpool, about being the main sponsor for a car show to be held at Olgivie Plaza.  Appellant told Gresh the car show would be held every Saturday from April through September. Gresh agreed and paid appellant $750, which appellant promised Gresh would get back.  Appellant never held a car show at the Olgivie Plaza.  And appellant did not refund Gresh's money.

{¶5}    The third transaction occurred sometime in the spring of 2008 when appellant approached Edward Gorby, owner of West Coast Tattooing in Calcutta, at his place of business about sponsoring a weekly bike show at Olgivie Square from April through September.  Gorby agreed and gave appellant $1,250.  Appellant never held the bike shows.  He eventually refunded Gorby $150 of the $1,250.

{¶6}    The fourth transaction occurred on March 10, 2008, when appellant approached Christopher McHenry, who owned Destination Cycle in Glenmore, about sponsoring a weekly car and bike show at Olgivie Square from May through September. McHenry agreed and paid appellant $500, which appellant promised he

would get back from the show's profits. Appellant did not hold any of the shows. He also never refunded McHenry's money.

{¶7} The fifth and final transaction occurred on March 6, 2008, when appellant approached Jim Werneke, an insurance agent at Allstate Insurance Company located in Olgivie Square Plaza, about sponsoring a weekly car show to be held in the plaza from April through September. Werneke agreed and gave appellant $400, which appellant promised he would get back. Appellant never held the expected shows and never refunded McHenry's money.

{¶8} On October 31, 2008, a Columbiana County Grand Jury indicted appellant on one count of theft where the value of the stolen property is more than $500 and less than $5,000, a fifth-degree felony in violation of R.C. 2913.02(A)(3).

{¶9} On June 24, 2009, a Columbiana County Grand Jury indicted appellant on three counts of theft where the value of the stolen property is more than $500 and less than $5,000, fifth-degree felonies in violation of R.C. 2913.02(A)(3); and one count of theft, a first-degree misdemeanor in violation of R.C. 2913.02(A)(3).

{¶10} The cases were consolidated for a jury trial. The jury found appellant guilty on all five counts. The court proceeded immediately to sentencing, over appellant's objection. The court sentenced appellant to six months on each of the four felony counts and an additional six months on the misdemeanor count. The court ordered that the sentences on the four felony counts run consecutively to each other and that the sentence on the misdemeanor count run concurrently with the other sentences for a total of two years in prison. The court also ordered appellant to make restitution to the five victims in the amounts of $750, $1,100, $750, $750, and $400.

{¶11} Appellant filed two timely notices of appeal on September 17, 2010. This court consolidated the two appeals.

{¶12} Appellant raises ten assignments of error, the first of which states:

{¶13} "DEFENDANT/APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED."

**{¶14}** Just before jury selection began, appellant moved the court to allow him to retain his own counsel. (Tr. 3). The court denied his request. The court noted that appellant's case originated in 2008 and it was now 2010, and pointed out that appellant had been the cause of the delay. (Tr. 3-6). The court stated that had appellant made his request in a more timely fashion, it would have approved it. (Tr. 5). Appellant then proceeded to trial with his court-appointed counsel.

**{¶15}** Appellant now argues that his right to counsel was violated when the trial court denied his request to hire counsel of his own choice.

**{¶16}** A trial court's decision to deny a substitution of counsel and require a trial to proceed with the assigned counsel is reviewed on appeal for abuse of discretion. *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999). Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶17}** "In evaluating a request for substitute counsel, the court must balance, 'the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice.' *United States v. Jennings* (C.A.6, 1996), 83 F.3d 145, 148. The court may deny the motion if it finds the motion was made simply to delay the trial, or was not made in good faith." *State v. Davis*, 7th Dist. No. 05-MA-235, 2007-Ohio-7216, ¶37.

**{¶18}** Here the court found that appellant's request for a continuance to obtain new counsel was made simply to delay the trial. The court pointed out to appellant that his was a 2008 case and it was now 2010. (Tr. 3-4). It referenced a comment it had made to appellant at a prior hearing that he was doing a good job of making sure the case did not go forward. (Tr. 4). The court told appellant that had he made his request for new counsel a month prior and not on the morning of trial, it would have granted it. (Tr. 5). It pointed out that at the last hearing it told him, "When your day for trial comes up, if you're still alive, and warm to the touch, we're going to trial." (Tr. 5). Appellant recalled that statement. (Tr. 5). Appellant then tried to argue that his

counsel was not prepared to proceed. (Tr. 5-6). However, the court questioned counsel who stated that he was prepared to go forward that day and informed the court of what he had done in preparation for trial. (Tr. 6-7).

**{¶19}** Given the above, we cannot conclude that the trial court abused its discretion in denying appellant's request for a continuance to obtain new counsel. The court made clear the reason it denied appellant's request was that he made it on the day of trial after two years of continuances. Furthermore, appellant's counsel stated that he was prepared to go forward with trial that day. Thus, the court's decision was not unreasonable, arbitrary, or unconscionable.

**{¶20}** Accordingly, appellant's first assignment of error is without merit.

**{¶21}** Appellant's second assignment of error states:

**{¶22}** "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING EVIDENCE OF DEFENDANT/APPELLANT'S ASSERTION OF HIS FIFTH AMENDMENT RIGHT TO REMAIN SILENT."

**{¶23}** Appellant argues that certain testimony violated his right to remain silent. He contends that the testimony was directed to lead the jury to assume that his silence meant that he was guilty.

**{¶24}** The Fifth Amendment of the United States Constitution guarantees an accused the right to remain silent and prevents the prosecution from commenting on the silence of a defendant who asserts the right. *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229 (1965).

**{¶25}** Appellant first takes issue with testimony by Officer Sharmain Daub. During direct examination, Officer Daub testified that she spoke on the phone with appellant several times between August 12 and September 9, 2008, during which appellant indicated that he was going to return money to Passerotti. (Tr. 120-23). Officer Daub stated that she spoke with Passerotti on October 8, 2008, and learned that he had not received a check from appellant. (Tr. 123). The prosecutor then asked Officer Daub if appellant ever contacted her regarding delivering the check to Passerotti. (Tr. 123). Officer Daub responded that appellant did not. (Tr. 123).

{¶26} Firstly, we must note that appellant's counsel did not object to Officer Daub's testimony. However, he later argues that his counsel was ineffective for failing to object.

{¶27} Generally, the failure to object to an alleged error waives all but plain error. *State v. Krupa*, 7th Dist. No. 09-MA-135, 2010-Ohio-6268, ¶57. But a defendant's claim that he was denied effective assistance of counsel eliminates the requirement that an objection be made in order to preserve an error for appeal. *Id.*, citing *State v. Carpenter*, 116 Ohio App.3d 615, 621, 688 N.E.2d 1090 (1996).

{¶28} When read in context, there was no error in Officer Daub's testimony. Her testimony detailed her investigation and her attempt to help Passerotti recover his funds from appellant. She was not commenting on appellant's purported silence. Instead she was describing that while appellant told Passerotti he would refund his money, appellant never followed through with this. Thus, Officer Daub's testimony did not violate appellant's right to remain silent.

{¶29} Second, appellant takes issue with testimony by Detective Brian McKenzie. During direct examination, the following took place:

{¶30} "Q. Did you take any action either that day, or the following week, with respect to those complaints [by Gresh and Werneke]?

{¶31} "A. Um, October 6th I actually made a phone call to the Defendant, um, actually spoke to the Defendant on the phone. I advised the Defendant that I had two complaints filed against him regarding the sponsorships for the car cruise, and I requested he come in for an actual interview.

{¶32} "The Defendant at that time refused to come in for an interview.

{¶33} "Later on that day I did receive a voicemail on my office phone from the Defendant, indicating that he was going to contact the two complainants at that time, and try to set up some sort of reimbursement plan with them.

{¶34} "THE COURT: Approach the bench for a minute.

{¶35} "[Off the record discussion]

**{¶36}** "THE COURT:  We're going to take a little time folks, this will just take a minute

**{¶37}** "(Thereupon, Attorney Gamble [the prosecutor] talked to the witness at the witness stand, out of the hearing of the jury.)"  (Tr. 258-59).

**{¶38}** Given the timing of the court's interruption, the court may have interrupted to instruct the prosecutor and Detective McKenzie not to comment on appellant's refusal to come in for an interview.  After the off-the-record sidebar, the prosecutor redirected his line of questioning back to the reimbursement and away from appellant's purported silence.  Thus, while we cannot be sure of the conversation between the court and counsel, the court may have cautioned the prosecutor to instruct Detective McKenzie not to testify about appellant's refusal to come in for an interview.

**{¶39}** Detective McKenzie later testified regarding his continuing investigation:

**{¶40}** "Q.  Did you call the Defendant, or speak to the Defendant any further about those matters, or speak to him further about the matters involving Mr. Werneke or Mr. Gresh?

**{¶41}** "A.  No, I did not.

**{¶42}** "Q.  How many times did you contact the Defendant?

**{¶43}** "A.  I actually spoke to the Defendant one time.  I called him probably two or three other times.

**{¶44}** "Q.  And did you hear back from him?

**{¶45}** "A.  No, sir."  (Tr. 261).

**{¶46}** Once again, appellant did not object to this testimony.

**{¶47}** As was the case with Officer Daub's testimony, Detective McKenzie was simply testifying about the course of his investigation and his attempt to help Gresh and Werneke recover their money from appellant.  His testimony was not a comment on appellant's silence.

**{¶48}** This court recently addressed a situation where the appellant took issue with testimony by an officer and an investigator from the prosecutor's office regarding

his failure to make contact and failure to meet for an appointment. *State v. Collins*, 7th Dist. No. 10-CO-10, 2011-Ohio-6365. As in this case, Collins asserted that this testimony violated his Fifth Amendment right to remain silent. We found that the testimony did not amount to a Fifth Amendment violation because the testimony was not clearly meant to allow the jury to infer Collins's guilt and the testimony did not directly refer to Collins's assertion of his right to silence, but, instead, went to describing the witnesses' course of investigation. *Id.* at ¶27.

**{¶49}** The same can be said here. Officer Daub's and Detective McKenzie's testimony were not meant to lead the jury to infer that appellant was guilty. Instead, both witnesses were discussing the course of their investigations and their efforts in seeing that several people received reimbursement from appellant. Thus, the admission of the contested testimony was not error.

**{¶50}** Accordingly, appellant's second assignment of error is without merit.

**{¶51}** Appellant's third assignment of error states:

**{¶52}** "DEFENDANT/APPELLANT'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE HIS ACCUSERS WAS DENIED."

**{¶53}** Here appellant argues that the trial court admitted inadmissible hearsay. Once again, appellant did not object to the testimony he now takes issue with. However, he also argues later in his appeal that his counsel was ineffective for failing to do so.

**{¶54}** Hearsay is an out-of-court statement, offered in court, to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay is inadmissible. Evid.R. 802.

**{¶55}** Appellant takes issue with two witnesses' testimony. First, he takes issue with Gresh's testimony that after he entered into the agreement with appellant, he was contacted by Dave Gamble from D&D Auto Repair. (Tr. 176-77). Gresh testified that Gamble told him appellant contacted him and asked him to be the main sponsor for the car show in which Gresh had already paid appellant $750 to be the

main sponsor. (Tr. 177-78). Gresh testified that this conversation with Gamble caused him concern. (Tr. 178, 192-93). Gresh also stated that a conversation with a maintenance worker at Olgivie Plaza where the worker indicated that the plaza did not have a contract for any car shows caused him some concern. (Tr. 178-79). And Gresh testified he had heard that appellant had gone to other businesses promoting car shows but no car shows ever materialized. (Tr. 189).

{¶56} This evidence was not offered to prove the truth of the matter asserted. Therefore, it is not hearsay. Gresh's testimony as to what others told him was an attempt to demonstrate the reason for his own growing concern over his "investment" with appellant. Furthermore, the only testimony that might have been offered to prove the truth of the matter asserted was Gresh's testimony that appellant had gone to other businesses promoting car shows that never materialized. This testimony was corroborated by each of the other victims in this case. They all testified that appellant promised car or bike shows and never followed through. Thus, Gresh's testimony on this point was merely cumulative.

{¶57} Second, appellant takes issue with Gary Shreve's testimony. Shreve was appellant's witness. He testified regarding numerous car shows he worked at for appellant. On cross examination, Shreve testified that he experienced a payment dispute after one of the shows where appellant had told him that the business owner was going to pay him and when he went to the business owner she told him that she had already paid appellant. (Tr. 285). Shreve stated that was the last time he heard from appellant. (Tr. 285-86).

{¶58} Once again, this statement was not offered to prove the truth of the matter asserted. Whether the woman in question had actually paid appellant for Shreve's services was irrelevant. Instead, what was relevant was that Shreve was involved in an on-going business relationship with appellant and after this dispute, he did not hear from appellant again.

{¶59} Because the testimony at issue was not hearsay, there was no error in its admission. Accordingly, appellant's third assignment of error is without merit.

**{¶60}** Appellant's fourth assignment of error states:

**{¶61}** "REVERSIBLE ERROR WAS COMMITTED WHEN THE PROSECUTION INTRODUCED EVIDENCE OF UNCHARGED MISCONDUCT ON THE PART OF DEFENDANT/APPELLANT."

**{¶62}** In this assignment of error, appellant contends that the state impermissibly introduced evidence of his prior bad acts. Specifically, he takes issue with Gresh's testimony that appellant's name appears in "just about any county system." (Tr. 193). And he takes issue with Shreve's testimony on cross examination about a misunderstanding regarding whether appellant received certain money (Tr. 285) and where the prosecutor asked Shreve about when appellant "stiffed" him (Tr. 286).

**{¶63}** Evidence of prior bad acts is inadmissible for proving that the accused acted in conformity with his bad character. *State v. Treesh*, 90 Ohio St.3d 460, 482, 739 N.E.2d 749 (2001); Evid.R. 404(B).

**{¶64}** As to Gresh's statement, appellant's counsel immediately objected. (Tr. 193). The trial court sustained the objection and instructed the jury to disregard the comment. (Tr. 913). A jury is presumed to follow the court's curative instructions. *State v. Bereschik*, 116 Ohio App.3d 829, 837, 689 N.E.2d 589 (1996). Thus, Gresh's statement was quickly addressed by the court and, we can presume, disregarded by the jury.

**{¶65}** Appellant's counsel did not object to Shreve's statements. But once again, appellant contends his counsel was ineffective for failing to do so.

**{¶66}** As discussed in appellant's third assignment of error, Shreve was appellant's witness who was called to testify as to the numerous car shows appellant held. He testified at length about the sponsors, dash plaques, and trophies from the various car shows. (Tr. 278-83). After listening to Shreve's testimony, the jury was likely left with the impression that appellant put on many car shows without issue. Thus, it was a proper cross examination subject for the prosecutor to attack this reputation of infallible car shows by bringing up one instance where everything did

not run smoothly. In other words, appellant put his reputation of putting on high-quality car shows at issue.

**{¶67}** As to the comment about being "stiffed," the prosecutor's question to Shreve was: "And when was it, that last show that you described, when you got stiffed on the fee?" (Tr. 286). Notably, the prosecutor did not ask when *appellant* stiffed him. Based on the preceding testimony discussed in appellant's third assignment of error and the question asked by the prosecutor, it was just as likely that the woman whom they were discussing "stiffed" Shreve.

**{¶68}** Thus, in none of the above instances did the trial court abuse its discretion in allowing the testimony. Accordingly, appellant's fourth assignment of error is without merit.

**{¶69}** Appellant's fifth assignment of error states:

**{¶70}** "THE TRIAL COURT ERRED BY JOINING ALL COUNTS IN BOTH CASES FOR TRIAL THEREBY DEPRIVING DEFENDANT/APPELLANT A FAIR TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION AMENDMENTS SIX AND FOURTEEN AND THE OHIO CONSTITUTION ARTICLES 1, SECTIONS 9, 10, 16."

**{¶71}** As set out above, the trial court joined appellant's two indictments together for trial. Appellant asserts that he was prejudiced by this joinder. He further asserts that he was prejudiced by the joining of all counts in the second indictment for one trial. He claims that the state requested the joinder because it wanted the jury to rely on evidence from each case to corroborate that in the other cases. He argues that the state's motive is exemplified in the prosecutor's closing argument where he lumped all of the offenses together by stating: "This Defendant took as much as four thousand dollars from residents and business owners here in Columbiana County." (Tr. 311).

**{¶72}** As was the case with many of appellant's previous alleged errors, he did not object to this alleged error. And as was the case with the other alleged to errors, he maintains that his counsel was ineffective for failing to lodge an objection.

{¶73} The decision to join offenses or indictments for trial will not be reversed absent a showing that the trial court abused its discretion. *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981); *State v. Gooden*, 8th Dist. No. 82621, 2004-Ohio-2699, ¶16.

{¶74} Pursuant to Crim.R. 8(A), two or more offenses may be charged in the same indictment if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." And pursuant to Crim.R. 13, two or more indictments may be tried together if they could have been joined in a single indictment. The Ohio Supreme Court has noted that "'[t]he law favors joining multiple criminal offenses in a single trial under Crim.R. 8(A).'" *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶28, quoting *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

{¶75} But if it appears that the defendant is prejudiced by a joinder, the trial court shall grant a severance or provide other relief as justice requires. Crim.R. 14. The burden is on the defendant to show prejudice. *Brinkley*, at ¶29, citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

{¶76} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). When simple and distinct evidence exists, an accused is not prejudiced by the joinder of multiple offenses in a single trial, regardless of whether the evidence is admissible as other-acts evidence. *State v. Coley*, 93 Ohio St.3d 253, 260, 754 N.E.2d 1129 (2001).

{¶77} The trial court did not abuse its discretion in granting the state's motion for a single trial here. The evidence of each crime was simple and distinct. Each victim simply testified as to how appellant approached them, their agreement with appellant, the fact that appellant never followed through with the agreement, and the

fact that appellant never refunded their money. There was nothing complicated about the evidence. Furthermore, all of the crimes occurred during the same short timeframe. The agreements were all entered into in February and March 2008 for shows that were to take place from April through September 2008. And all of the crimes were of a very similar character pursuant to Crim.R. 8(A). Each one involved appellant taking money from someone, promising to hold car/bike shows where the person would make their money back and advertise, and appellant failing to hold the promised shows. Consequently, the court did not abuse its discretion in holding a single trial for all five crimes.

**{¶78}** Accordingly, appellant's fifth assignment of error is without merit.

**{¶79}** Appellant's sixth assignment of error states:

**{¶80}** "DEFENDANT/APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

**{¶81}** Here appellant argues that his counsel was ineffective for failing to object to the instances set out in assignments of error two (alleged violations of right to remain silent), three (alleged inadmissible hearsay), four (testimony on prior bad acts), and five (joinder of offenses for trial).

**{¶82}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶83}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶84}** Counsel was not ineffective in this case. All of appellant's alleged instances of ineffectiveness rely on assertions that his counsel should have objected at various points throughout the trial proceedings.

**{¶85}** Counsel can be considered to have been ineffective where there was deficient performance in the failure to object to a matter and the result of the proceeding would have been different but for the failure to object. *State v. Clemons*, 7th Dist. No. 10-BE-7, 2011-Ohio-1177, ¶15. However, "[t]he failure of counsel to object may be the result of trial strategy, and 'will almost never rise to the level of ineffective assistance of trial counsel.'" *State v. Rossbach*, 6th Dist. No. L-09-1300, 2011-Ohio-281, ¶141, quoting *State v. Jones*, 2d Dist. No. 20349, 2005-Ohio-1208, ¶28.

**{¶86}** We have already reviewed appellant's assignments of error where he calls into question the issues he believes counsel sould have objected to. None of them have merit. Moreover, appellant has not demonstrated that the result of his trial would have been different had his counsel objected. Accordingly, appellant's sixth assignment of error is without merit.

**{¶87}** Appellant's seventh and eighth assignments of error share a common factual basis. Therefore, we will address them together. They state:

**{¶88}** "DEFENDANT/APPELLANT'S CONVICTION WAS BASED ON LEGALLY INSUFFICIENT EVIDENCE."

**{¶89}** "DEFENDANT/APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶90}** Appellant contends that the offenses he was convicted of were based upon facts of a purely civil nature that were more akin to establishing a breach of contract claim. He notes that many witnesses testified as to his "agreements," "business agreements," or "contracts" with the alleged victims. Appellant asserts that breach of contract does not equal theft. Thus, he contends that his convictions were not supported by sufficient evidence because, at best, the evidence established that he breached contracts with the alleged victims.

{¶91} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶92} The jury convicted appellant of five counts of theft in violation of R.C. 2913.02(A)(3), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception."

{¶93} In four of the counts, the value of the property stolen was $500 or more and less than $5,000. Thus, these four counts were fifth-degree felonies. R.C. 2913.02(B)(2). In the remaining count, the value of the property stolen was less than $500. Thus, this count was a first-degree misdemeanor. R.C. 2913.02(B)(2).

{¶94} The evidence at trial was as follows.

{¶95} Passerotti testified that in February 2008, appellant came into his pizza shop and proposed that Passerotti allow him to put on a weekly car show in the parking lot. (Tr. 133-34). Passerotti stated that appellant would charge five dollars a car, award prizes, hand out tee-shirts, and provide D.J. services. (Tr. 134, 140). Appellant told Passerotti he would recoup his money from the five-dollar-per-car fee up to the $750 he was to invest and then he and appellant would split the fees after that point. (Tr. 135). Appellant presented Passerotti with a document setting out some terms of the agreement, which both parties signed. (Ex. 1). There was a term stating, "All deposits non-refundable on request by both parties," which appellant crossed out and initialed at Passerotti's request. (Ex. 1; Tr. 140-41). Passerotti

agreed to appellant's proposition and paid him $750 by check. (Tr. 142-43). When the time neared for the first show, Passerotti contacted appellant. (Tr. 145). Appellant informed Passerotti that he had to cancel the first show due to the death of either his aunt or his mother. (Tr. 145). Appellant indicated that the show would go on the following week. (Tr. 146). But when the time arrived, appellant told Passerotti there had been a death in the car club. (Tr. 146). When the time approached for what should have been the third show, appellant again told Passerotti he had to cancel due to a death. (Tr. 148). At this point, Passerotti contacted Lisbon Police Officer Sharmain Daub to report appellant. (Tr. 148). Passerotti stated that appellant never refunded any of his money despite never holding a car show. (Tr. 150).

{¶96} On cross examination, Passerotti agreed that his arrangement with appellant was a business agreement. (Tr. 156).

{¶97} Officer Daub testified Passerotti filed a complaint with her in August 2008, regarding appellant's failure to either hold the promised car shows or refund his $750. (Tr. 119-20). Officer Daub stated that she contacted appellant who informed her that he would send a check in the mail to reimburse Passerotti. (Tr. 120). When Passerotti did not receive the check, she contacted appellant who told her that he mailed a check, but it must not have arrived. (Tr. 122). Appellant told her twice more that he would mail another check, which Passerotti never received. (Tr. 122-23). Consequently, Officer Daub filed charges against appellant. (Tr. 123).

{¶98} Gresh was the next victim to testify. Gresh stated that in February 2008, appellant came into his business, Calcutta Auto Parts, and asked him if he was interested in sponsoring a car show at Olgivie Plaza to be held every Saturday from April through September. (Tr. 167). Appellant told Gresh that he would be the main sponsor and would have his name on all of the banners and trophies. (Tr. 168). Because the car show was supposed to be co-sponsored by Coca Cola, appellant told Gresh he would get his money back. (Tr. 168). Gresh agreed and paid appellant $750. (Tr. 170). Appellant presented Gresh with a contract setting out details of the show/sponsorship. (Ex. 9). It states, "All deposits non-refundable on

request by both parties." (Ex. 9). It is signed only by appellant. (Ex. 9). Gresh further testified that the next day, a client of his contacted him and told him that appellant had approached him about being the main sponsor of the car show. (Tr. 177). Gresh said that this started to give him a bad feeling since he was supposed to be the main sponsor. (Tr. 177-78). Gresh stated that he contacted appellant in April and appellant told him that his mother-in-law was sick and he had to postpone the car show. (Tr. 179). Gresh waited and contacted appellant a few weeks later. (Tr. 179). Appellant told Gresh his mother-in-law had died. (Tr. 179). Gresh kept calling appellant and appellant kept telling him the shows would go on but he was having problems getting permits. (Tr. 180). In May or June, appellant told Gresh the shows would not go on and he would refund Gresh's money. (Tr. 181). When he did not receive a check from appellant, Gresh contacted him again and appellant promised to deliver a check. (Tr. 181). However, appellant never did. (Tr. 181). Gresh agreed on cross examination that his agreement with appellant was a contract. (Tr. 186).

{¶99} Gorby, the third victim testified next. He stated that in the spring of 2008, appellant approached him at his tattoo business and asked if he would be willing to sponsor a bike show for $500 to be held at Olgivie Square from April through September. (Tr. 198, 203). Gorby stated that appellant promised him radio time, television spots, and banners. (Tr. 198). Appellant also told Gorby he would get his money back in May. (Tr. 198). Gorby agreed and gave appellant $500. (Tr. 200). A few days later, appellant came back into Gorby's shop and asked if he wanted tee shirts for an additional $250, which like the initial investment, he would get back. (Tr. 200). Gorby agreed and gave appellant the $250. (Tr. 201). A few days later, appellant returned to Gorby's shop and offered for Gorby to sponsor the whole show for an additional $750, to which Gorby again agreed. (Tr. 201-202). Appellant provided Gorby with a copy of the agreement, signed by appellant only, containing the statement "All deposits non-refundable on request by both parties." (Ex. 11). When the time for the shows approached, Gorby called appellant several

times and each time appellant told him he was having trouble getting a permit. (Tr. 207). Gorby testified that he found out no permits were required and then asked appellant for his money back. (Tr. 209). Appellant told Gorby there was a death in his family and he would start sending his money back. (Tr. 209). Gorby received a check for $150 from appellant. (Tr. 210). However, he never received the remaining $1,150. (Tr. 210-11). Gorby then reported appellant to the police. (Tr. 211).

**{¶100}** McHenry, the fourth victim, testified that appellant came into Destination Cycle in March 2008, and asked him to donate money towards a car/bike show at Olgivie Square to be held weekends from May through September. (Tr. 220, 221-22). Appellant told McHenry he would be reimbursed within three months. (Tr. 220, 225). McHenry stated that for $500, appellant promised to put his name on tee shirts and banners at the show. (Tr. 220). Appellant presented McHenry with an agreement, which was signed by only appellant. (Ex. 12). It too contains the statement, "All deposits non-refundable on request by both parties." (Ex. 12). McHenry gave appellant $500. (Tr. 226). McHenry stated that he never received his money back from appellant despite numerous calls and excuses. (Tr. 227-28). On cross examination, McHenry referred to his agreement with appellant as a contract. (Tr. 228-29).

**{¶101}** Werneke, the fifth victim, testified that appellant approached him in March 2008 at his place of business, Allstate Insurance Company, about sponsoring a car show to be held every other weekend in the Olgivie Plaza parking lot from April through September. (Tr. 233). Werneke paid appellant $400. (Tr. 234). Appellant presented Werneke with a contract setting out the terms. (Ex. 5). Only appellant signed the contract. (Ex. 5). Werneke contacted appellant several times in March and April to make sure things were on track and appellant repeatedly assured him that they were. (Tr. 242). After a few show dates had come and gone without a show, appellant told Werneke that the cancellations were due to the death of his mother and either his mother-in-law or aunt. (Tr. 243). Werneke eventually asked for

his money back. (Tr. 244). Appellant told Werneke he would return the $400, but he never did. (Tr. 247).

{¶102} Detective McKenzie of the St. Clair Police Department testified that he received complaints from Gresh, Werneke, McHenry, and Gorby regarding appellant. (Tr. 256, 258, 260, 261). They all told Detective McKenzie that they had paid appellant for car show sponsorships and the car shows never took place. (Tr. 257-58). After speaking with Gresh and Werneke, Detective McKenzie contacted appellant who indicated to him that he was going to reimburse them. (Tr. 259).

{¶103} In his defense, appellant called three witnesses. Shreve was the first to testify. Shreve has performed at many of appellant's car shows. Shreve stated that at these shows, appellant would hand out dash plaques and other items with sponsors' names on them. (Tr. 279). On cross examination, Shreve testified regarding his last performance with appellant where he did not get paid due to a dispute over whether the host of the show or appellant was to pay him. (Tr. 285-86). He also stated that appellant never contacted him to participate in any car shows in Columbiana County. (Tr. 288).

{¶104} Winfred Murphy was appellant's next witness. Murphy has helped appellant set up equipment for car shows since 1987. (Tr. 291-92). He stated that at the shows appellant plays music and passes out trophies and plaques. (Tr. 292). Murphy stated that he prepared to do a show at East of Chicago Pizza but that the owner wanted his money back. (Tr. 293). Murphy also testified that appellant's father passed away in April 2008. (Tr. 293-94).

{¶105} Pam Foster was the final witness. Foster owns a trophy shop. She testified that appellant ordered 300-350 car show trophies from her. (Tr. 304-305). She stated that he only paid for about half of them. (Tr. 305-306).

{¶106} This evidence is sufficient to support appellant's convictions. As to each theft offense, the victim testified that he gave appellant a certain sum of money, that appellant promised to hold car/bike shows, that appellant promised the victim that he would receive all of his money back, and that appellant never held the shows

and never refunded the money. Also, the witnesses testified as to the excuses appellant used for not holding the shows and how appellant stated he would refund their money but never did. This evidence, when construed in the light most favorable to the state, goes to show that appellant purposely deprived the victims of their money by knowingly exerting control over it by deception, in other words promising to hold the car shows with no intent of ever doing so.

{¶107} Thus, sufficient evidence exists to support appellant's convictions.

{¶108} Appellant also alleges that the jury's verdict was against the manifest weight of the evidence. He contends that the state convinced the jury to convict him of theft by cumulating the evidence and suggesting that he stole $4,000 from the good people of Columbiana County (Tr. 311) and suggesting that they simply trust the prosecutor and substitute his experience for their own judgment (Tr. 310).

{¶109} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶110} Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶49, citing *State v. Hill*, 75

Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶111} Appellant contends the jury found him guilty because the state cumulated the evidence against him. However, each victim gave independent testimony against appellant explaining how appellant made promises to them, took their money, and never followed through. They also each gave testimony as to how their suspicions were aroused and how they came to believe that appellant never intended to hold the promised car/bike shows. Additionally, each victim independently went to the police and filed a complaint against appellant. No evidence contradicted that of the victims.

{¶112} Appellant also asserts that the prosecutor told the jury to trust him and substitute his experience for their own judgment. However, a review of the cited transcript page does not reveal any such suggestion by the prosecutor. (Tr. 310). The closest statement that can be found is where the prosecutor states, "if it's too good to be true, it's not true." (Tr. 310). Regardless of what the prosecutor said or did not say in closing arguments, there is no indication that the jury's verdict was against the weight of the evidence.

{¶113} As such, the manifest weight of the evidence supports the jury's verdict.

{¶114} Accordingly, appellant's seventh and eighth assignments of error are without merit.

{¶115} Appellant's ninth assignment of error states:

{¶116} "DEFENDANT/APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT."

{¶117} Appellant asserts here that his trial was filled with prosecutorial misconduct. He points to those alleged errors raised in his second, third, fourth, and

fifth assignments of error as constituting prosecutorial misconduct. Appellant also refers to certain comments by the prosecutor during his opening statement and closing argument.

**{¶118}** Appellant failed to object to the comments he now characterizes as misconduct. A failure to object to alleged prosecutorial misconduct generally waives all but plain error; however, a defendant's claim that he was denied effective assistance of counsel eliminates the requirement that an objection be made in order to preserve an error for appeal. *Carpenter*, 116 Ohio App.3d at 621.

**{¶119}** The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999). In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected the appellant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[T]he touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶61, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982). An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶121.

**{¶120}** Appellant takes issue with three remarks by the prosecutor. First, during his opening statement, the prosecutor twice referred to appellant as a "con man." (Tr. 109, 114). Second, appellant points to the prosecutor's remark during closing argument that, "[e]verybody has heard about these scams, the F.B.I. investigates them all the time." (Tr. 310-11). Finally, appellant points to the prosecutor's closing remark:

**{¶121}** "This guy is good at what he does, see. Con men identify those persons that they think that they can extract the money out of. Don't you be conned

by him. Don't you pony up a check for seven hundred and fifty dollars to this guy. Don't buy what he's selling." (Tr. 318).

**{¶122}** Appellant cannot show prejudice resulting from these statements. While the comments may have been inappropriate, the evidence clearly supported the jury's verdict. As discussed in detail in appellant's seventh and eighth assignments of error, the jury had more than ample evidence on which to convict appellant. These statements by the prosecutor would have been inconsequential to the jury in reaching their verdict.

**{¶123}** Accordingly, appellant's ninth assignment of error is without merit.

**{¶124}** Appellant's tenth assignment of error states:

**{¶125}** "THE TRIAL COURT'S SENTENCES ARE CONTRARY TO LAW."

**{¶126}** Appellant contends that the trial court failed to consider the overriding purposes of sentencing, the need to protect the public, and the need to punish the offender as mandated by R.C. 2929.11(A) and (B) and failed to consider the factors that made his conduct more or less serious as mandated by R.C. 2929.12(B) and (C). Appellant also contends that the court failed to consider R.C. 2929.13(A), which prohibits the court from imposing a sentence that is unnecessarily burdensome on state resources.

**{¶127}** Our review of felony sentences is a limited, two-fold approach, as outlined in the plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶26. First, we must examine the sentence to determine if it is "clearly and convincingly contrary to law." Id. (O'Conner, J., plurality opinion). In examining "all applicable rules and statutes," the sentencing court must consider R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶¶ 13-14. (O'Conner, J., plurality opinion). If the sentence is clearly and convincingly not contrary to law, the court's discretion in selecting a sentence within the permissible statutory range is subject to review for abuse of discretion. *Id.* at ¶ 17. (O'Conner, J., plurality opinion).

**{¶128}** Here appellant was convicted of four fifth-degree felonies and one first-degree misdemeanor. The possible prison terms for a fifth-degree felony are six,

seven, eight, nine, ten, eleven, or twelve months. R.C. 2929.14(A)(5). On each of the four felonies, the trial court sentenced appellant to six months in prison. The maximum sentence for a first-degree misdemeanor is 180 days, or six months. R.C. 2929.24(A)(1). The trial court sentenced appellant to six months in the county jail on the misdemeanor. Thus, each of appellant's individual sentences was within the appropriate statutory range.

{¶129} The court was also required to consider R.C. 2929.11 (the overriding purposes of sentencing) and R.C. 2929.12 (the seriousness and recidivism factors) in sentencing appellant. Appellant asserts the court failed to do so.

{¶130} While the court failed to specifically mention these statutes, it was not required to do so. This court has stated:

{¶131} "[W]e hold that reversal is not automatic where the sentencing court fails to provide reasons for its sentence or fails to state at sentencing or in a form judgment entry, 'after considering R.C. 2929.11 and 2929.12'. We return to the *Adams* rule that *a silent record raises the rebuttable presumption that the sentencing court considered the proper factors*. We hereby adopt the Second District's statement that where the trial court's sentence falls within the statutory limits, 'it will be presumed that the trial court considered the relevant factors in the absence of an affirmative showing that it failed to do so' unless the sentence is 'strikingly inconsistent' with the applicable factors. [*State v.*] *Sloane*, 2d Dist. Nos.2005CA79, 2006CA75[, 2007-Ohio-130] at ¶ 20." (Emphasis added.) *State v. James*, 7th Dist. No. 07-CO-47, 2009-Ohio-4392, ¶50. See also, *State v. Toney*, 7th Dist. No. 10-MA-20, 2011-Ohio-2464; *State v. Watson*, 7th Dist. No. 09-MA-62, 2011-Ohio-1178.

{¶132} Furthermore, although the court did not mention the statutes by name, it did make several findings in accordance with the statutory factors. For instance, in its sentencing judgment entry the court found that appellant has an extensive criminal history of thefts by deception dating back to 1996 (R.C. 2929.12(D)(2)); appellant has shown no remorse for his actions (R.C. 2929.12(D)(5)); and appellant was on

community control when these five offenses were committed (R.C. 2929.12(D)(1)). These findings indicate that the court did indeed consider the statutory factors.

**{¶133}** Hence, appellant's sentence is not contrary to law.

**{¶134}** Next, we must consider whether the trial court abused its discretion in sentencing appellant.

**{¶135}** Appellant's only argument on this point is that the court failed to consider R.C. 2929.13(A), which provides in relevant part: "The sentence shall not impose an unnecessary burden on state or local government resources."

**{¶136}** "'Just what constitutes a "burden" on state resources is undefined by the statute, but the plain language suggests that the costs, both economic and societal, should not outweigh the benefit that the people of the state derive from an offender's incarceration.'" *State v. Goins*, 7th Dist. No. 06-MA-131, 2008-Ohio-1170, ¶35, quoting *State v. Vlahopoulos*, 154 Ohio App.3d 450, 2003-Ohio-5070, ¶5.

**{¶137}** It would seem society would benefit from the incarceration of a person who has an extensive history of thefts by deception. Then the person would not be out on the street deceiving more people into giving him their money. Thus, there is no indication that the trial court abused its discretion in this respect.

**{¶138}** Accordingly, appellant's tenth assignment of error is without merit.

**{¶139}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

DeGenaro, J., concurs.